*223
 
 LAWYER DISCIPLINARY PROCEEDINGS
 

 VICTORY, J.
 
 *
 

 |, This disciplinary matter originated with a complaint alleging that respondents Ivan David Warner and Steven Joseph Rando had breached the confidentiality rule imposed upon participants in an attorney disciplinary proceeding by La. S.Ct. Rule XIX, § 16. In defense, the respondents argued that the confidentiality rule for attorney disciplinary proceedings violates the First Amendment of the United States Constitution. For the reasons which follow, we find that the confidentiality rule does indeed violate the First Amendment, as it constitutes an unconstitutional content-based restriction of speech. U.S. Const, amend. I. Therefore, the confidentiality rule imposed upon participants in an attorney disciplinary proceeding must fall. Given our findings, the charges against respondents no longer have a valid foundation in law. Accordingly, all charges against respondents be and hereby are dismissed.
 

 FACTS and PROCEDURAL HISTORY
 

 In 1996, respondent Ivan David Warner was retained to represent a client who had been involved in a motor vehicle accident while in the course and scope of his employment with a trucking company. Warner initiated both the client’s claim for workers’ compensation benefits, as well as the client’s suit for damages against the third-party tortfeasor, i.e., the owner of the other vehicle involved in the accident.
 
 *224
 
 Attorney S was counsel for the employer trucking company. In 1998, |2before either case was resolved, the client discharged Warner and subsequently hired Attorney C and his associate, Attorney B, to manage the ongoing litigation.
 
 [1]
 
 The third-party liability case was tried in federal court and resulted in a verdict for the defense in early 2000. The workers’ compensation case was settled in September 1999. Warner’s claims for attorneys fees and costs were not protected in the disbursement of the workers’ compensation settlement funds. In response, Warner initiated the legal actions described below.
 

 In June of 2000, Warner filed suit in Orleans Parish Civil District Court against Attorney C and Attorney S, asserting that the attorneys’ failure to honor his claims for fees and costs in the settlement of the workers’ compensation case was a violation of the Rules of Professional Conduct.
 
 [2]
 
 The petition included claims of negligence, fraud, and intentional acts, including theft. This suit was later amended to add Attorney B as a defendant. Warner retained Steven Joseph Rando to represent him in this civil suit; Warner was not attorney of record and made no appearance as counsel in this matter. The defendants filed exceptions and other pleadings which placed at issue the allegations in Warner’s petition.
 

 In February 2002, while the civil suit was still pending, Warner filed complaints with the Office of Disciplinary Counsel (“ODC”) against Attorney B, Attorney C, and Attorney S, alleging the same improprieties contained in the lawsuit. Rando was not counsel for Warner in connection with the disciplinary complaints, nor did he otherwise participate in the filing of the complaints. The ODC notified Attorney B, Attorney C, and Attorney S of the filing of the | scomplaints by letters dated March 25, 2002. Copies of these letters were sent to Warner on the same day. Each of the letters indicated in closing that “This matter is confidential at this stage except for necessary disclosures in the course of our investigation. A necessary disclosure may include, for example, sending a copy of your response to the complainant for comment.”
 

 In April 2002, the ODC received the responses to Warner’s complaints from Attorney B, Attorney C, and Attorney S. On May 2, 2002, the responses were forwarded to Warner. Nothing in the May mailing to Warner indicated that the attorneys’ responses were confidential.
 

 On May 10, 2002, Rando, on behalf of Warner, filed a partial motion for summary judgment in the civil case. Attached to the motion as exhibits were the responses Attorney B, Attorney C, and Attorney S had provided to the ODC in defense to Warner’s disciplinary complaints. Rando referenced the various responses and argued inconsistencies in the responses in the text of his memorandum in support of the motion for summary judgment. The trial court subsequently denied the motion for summary judgment. Seven days later, Attorney B filed a complaint with the ODC. Attorney B alleged that Warner and Rando had violated the confidentiality provisions of the attorney disciplinary process by using the responses that Attorneys B, C, and S had tendered to the ODC as
 
 *225
 
 exhibits in support of Warner’s motion for summary judgment. Attorney B pointed out that the record of the civil suit was available to the public.
 

 Both the civil suit and the attorney disciplinary investigation initiated by Warner were resolved by 2003. In April 2002, the ODC dismissed Warner’s complaints against Attorney B, Attorney C, and Attorney S. Warner did not appeal the dismissal of the complaints. On November 14, 2003, the parties to the civil suit | ¿informed the court that they had reached a confidential settlement, and the court, in accordance with a joint motion from all parties, sealed the record of the civil suit.
 
 [3]
 

 DISCIPLINARY PROCEEDINGS
 

 Based upon the complaint filed by Attorney B, the ODC filed formal charges against respondents, alleging that “[t]he combined actions of both Ivan David Warner and Steven Joseph Rando breeched [sic] the La. S.Ct. Rule XIX Section 16 A, G & I confidentiality provided for bar complaints under investigation by [the] ODC.” The ODC further alleged that respondent’s conduct constituted a violation of Rules 1.2(a) & (d); 1.16(a)(1); 2.1; 3.1; 3.4(c); 4.4; and 8.4(a)(c)
 
 &
 
 (d) of the Rules of Professional Conduct.
 

 The Hearing Committee noted that “[u]nder a plain reading of the many rules cited by the ODC” in the formal charges, “nothing really fits this situation to a ‘T.’ ” However, the committee found the respondents actions were knowing, intentional, and had caused actual injury and accordingly recommended discipline. The Disciplinary Board also found both respondents guilty of misconduct. The Board found that Warner had violated Rule XIX, § 16(A) and (I) and that Rando had violated Rule XIX, § 16(A). The Board held that Rule XIX, § 16(G) was inapplicable to the matter at hand.
 
 [4]
 
 In a dissent, one member of the Disciplinary |sBoard questioned the constitutionality of the confidentiality rule,
 
 [5]
 
 although this issue had not been raised by the parties at either the hearing or the Board proceedings.
 

 
 *226
 
 Both respondents, as well as the ODC, subsequently filed objections to the Disciplinary Board’s recommendation with this Court. In their objections, the respondents, echoing the substance of the aforementioned dissent, raised for the first time the argument that the confidentiality provided by La. S.Ct. Rule XIX, § 16 for bar complaints was unconstitutional. Respondents specifically charged that the confidentiality rule violated their rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.
 

 We first heard oral arguments in this case in January 2006. At that time, the Court questioned counsel as to whether the constitutional issue was properly before the Court given the fact that respondents had failed to raise any constitutional concerns before the Hearing Committee or the Disciplinary Board. Following oral argument, we issued an order inviting supplemental briefing from Warner, Rando, and the ODC addressing two issues: (1) whether the question of the constitutionality of Supreme Court Rule XIX, § 16 was properly before the Court, and (2) what procedure this Court should employ to address the constitutional question.
 

 After due consideration, this Court, acknowledging its original jurisdiction over bar disciplinary matters, agreed to consider the constitutional |fiquestion. To that end, given the unique facts and circumstances of this case, the absence of a developed evidentiary record on the issue, and the novel nature of the question raised by respondents, we issued an order on April 20, 2006, appointing retired Judge Philip Ciaccio as a commissioner to “take evidence and to develop a record concerning the issue of the constitutionality of Supreme Court Rule XIX, § 16.”
 
 In Re: Ivan David Warner and Steven Joseph Rando,
 
 05-1303 (La.4/20/2006), La. S.Ct. Order.
 

 Judge Ciaccio conducted a hearing on August 30, 2006. We refer to the transcript of this hearing throughout the course of our opinion. During this proceeding, the ODC
 
 [6]
 
 called several witnesses to testify: Joseph L. Shea, Jr., a Shreveport attorney who has served at the Louisiana Attorney Disciplinary Board as a Hearing Committee member, Board member, and Chair of the Board; Marta-Ann Schnabel, a New Orleans attorney who was then serving as the president of the Louisiana State Bar Association (“LSBA”); Richard Stanley,
 
 [7]
 
 a New Orleans attorney who frequently represents respondents in bar disciplinary matters and has served as an adjunct professor at Tulane University Law School in a variety of courses including the professional responsibilities seminar; and finally, Charles Plattsmier, the ODC’s Chief Disciplinary Counsel. These witnesses expressed their views as to the proper application and function of the confidentiality provided by Supreme Court Rule XIX, § 16 for attorney disciplinary matters. Each witness testified that the confidentiality imposed by the rule serves several important interests. Respondents called only one witness, Steve LCorbally, a former investigator for the bar disciplinary
 
 *227
 
 system in Massachusetts. Mr. Corbally stated that during his term of service as an investigator, Massachusetts only imposed confidentiality upon the office of disciplinary counsel and the Board of Bar Overseers. Mr. Corbally testified that although confidentiality was not imposed upon either the complainants or respondents in attorney disciplinary matters, the discipline system in Massachusetts, as a whole, functioned very well.
 

 Following the hearing, Judge Ciaccio issued a written report to this Court.
 
 [8]
 
 After a review of these findings, the Court heard a second oral argument solely on the constitutional issue on April 8, 2008. Thereafter we took the case under advisement.
 

 LAW and ANALYSIS
 

 The ODC’s charge that Warner and Rando violated several Rules of Professional Conduct is based upon Warner’s and Rando’s alleged breach of the confidentiality imposed upon participants in an attorney disciplinary proceeding by La. S.Ct. Rule XIX, § 16(A) and (I) (“the confidentiality rule”).
 
 [9]
 
 Thus, if the confidentiality rule is unconstitutional, as respondents argue, then the ancillary charge that Warner and Rando violated several Rules of Professional Conduct must likewise fall.
 

 ^Warner and Rando argue that the confidentiality provided by La. S.Ct. Rule XIX, § 16(A) and (I) violates the First Amendment of the United States Constitution, specifically asserting that this confidentiality rule is an unconstitutional content-based restriction of speech, that it is void for vagueness, and that the rule acts as an impermissible prior restraint of speech. Respondents direct this Court’s attention to the decisions of four other courts which have reviewed similar confidentiality rules in the attorney disciplinary context.
 
 R.M.
 
 u
 
 Sup.Ct.,
 
 185 N.J. 208, 883 A.2d 369 (2005);
 
 Doe v. Doe,
 
 127 S.W.3d 728 (Tenn.2004);
 
 Petition of Brooks,
 
 140 N.H. 813, 678 A.2d 140 (1996);
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. 981 (S.D.Fla. 1990).
 
 [10]
 
 Each of these four courts held
 
 *228
 
 that the confidentiality rules in question violated the tenants of the First Amendment. In addition to their First Amendment claims, the respondents also argue that the confidentiality provisions violate the Equal Protection Clause of the Fourteenth Amendment. U.S. Const, amend. XIV.
 

 For the following reasons, we find that the confidentiality provisions of La. S.Ct. Rule XIX, § 16(A) and (I) do indeed violate the First Amendment of the United States Constitution, as they constitute an impermissible content-based restriction of speech. Thus, the confidentiality rule imposed by La. S.Ct. Rule XIX, § 16(A) and (I) must fall. Accordingly, we order that all charges against the [¡¡respondents be dismissed. Our resolution of the matter on these grounds renders a review of the respondents’ other arguments unnecessary.
 

 As we begin our analysis, we will first briefly review the general basis for the application of First Amendment principles to the case at hand. We will then proceed to define the proper scope and application of the confidentiality rule. Finally, we will determine the appropriate level of constitutional scrutiny and review the confidentiality rule under these standards.
 

 I. The Limitations Imposed by the First Amendment are Applicable In the Present Matter
 

 The First Amendment to the United States Constitution provides that “Congress shall make no law ... abridging the freedom of speech.” U.S. Const, amend. I. In a series of cases, the Supreme Court has held, “that the liberty of speech and of the press which the First Amendment guarantees against abridgement by the federal government is within the liberty safeguarded by the Due Process Clause of the Fourteenth Amendment from invasion by state action.”
 
 First Nat. Bank of Boston v. Bellotti,
 
 435 U.S. 765, 779, 98 S.Ct. 1407, 1417, 55 L.Ed.2d 707 (1978). The Louisiana Supreme Court is a state entity.
 
 [11]
 
 Acting under its constitutional and inherent authority, the Court has adopted La. S.Ct. Rule XIX, § 16(A) and (I), provisions which, on their face, abridge speech regarding attorney disciplinary proceedings. La. S.Ct. Rule XIX, § 1 (“Under the authority of Article V, Section 5(A) and (B) of the Louisiana Constitution of 1974 and the inherent power of this court ... the following Rules for Lawyer Disciplinary Enforcement be and are hereby adopted.”). Thus the protections of the First Amendment are applicable in the instant matter.
 

 |inII. La. S.Ct. Rule XIX, § 16(A) and (I)
 

 The confidentiality provisions implicated in the instant case are La. S.Ct. Rule XIX, § 16(A) and (I). A proper understanding of the history, scope, and application of these provisions is critical to our constitutional analysis. The proper interpretation of this text appears to be a matter of first impression before this Court. Rule XIX, § 16(A) and (I), in pertinent part,
 
 [12]
 
 provide:
 

 
 *229
 
 SECTION 16. ACCESS TO DISCIPLINARY INFORMATION
 

 A. Confidentiality.
 

 Prior to the filing and service of formal charges in a discipline matter, the proceeding is confidential, except that the pendency, subject matter, and status of an investigation may be disclosed by disciplinary counsel if:
 

 (1) the respondent has waived confidentiality;
 

 (2) the proceeding is based upon allegations that include either the conviction of a crime or reciprocal discipline;
 

 (3) the proceeding is based upon allegations that have become generally known to the public; or
 

 (4) there is a need to notify another person or organization in order to protect the public, the administration of justice, or the legal profession ...
 

 [[Image here]]
 

 I. Duty of Participants.
 

 All participants in a proceeding under these rules shall conduct themselves so as to maintain the confidentiality mandated by this rule.
 

 A. The Origins of La. S.Ct. Rule XIX, § 16(A) and (I)
 

 We begin our review of these provisions by briefly examining their origins. As we explained in our decision
 
 In Re: Roy A. Raspanti,
 
 08-6954 (La.3/17/09), 8 So.3d 526, in February of 1990, this Court became the first state high court to adopt the American Bar Association’s (“ABA”) 1989 Model Rules for Lawyer ^Disciplinary Enforcement (“MRLDE”).
 
 [13]
 
 The text of La. S.Ct. Rule XIX, § 16(A) and (I) was adopted from the 1989 version of ABA MRLDE 16.
 
 [14]
 

 See
 
 114 No. 2
 
 Annu. Rep. ABA
 
 334-337 (1989).
 

 The approval of the 1989 MRLDE by the ABA House of Delegates was the culmination of over twenty years of research and revision by various ABA committees.
 
 [15]
 
 In order to keep the MRLDE current and useful, the ABA has continued to study disciplinary systems and has amended the model rules several times.
 
 [16]
 

 
 *230
 
 We note with interest that in 1993 the ABA amended the source provisions for La. S.Ct. Rule XIX, § 16(A) and (I). 118 No. 2
 
 Annu. Rep. ABA
 
 180-182, 226-227 (1993). The amended provisions impose confidentiality only upon the disciplinary agency. The confidentiality rule for “participants” in attorney | ^disciplinary proceedings, imposed by the 1989 model rule and at issue in this case, was removed.
 
 [17]
 

 Id.
 

 These changes were made after the ABA House of Delegates considered a report filed by the ABA Commission on Evaluation of Disciplinary Enforcement,
 
 [18]
 
 commonly known as the McKay Commission,
 
 [19]
 
 which, in pertinent part, called into question the constitutionality of confidentiality rules governing disciplinary proceedings.
 
 [20]
 
 Specifically, the report noted
 
 *231
 
 that several courts had held that 1 ^confidentiality rules, as applied in disciplinary proceedings, violated the First Amendment.
 
 [21]
 
 The comments regarding confidentiality focused heavily on the decision in
 
 Doe v. Sup.Ct,
 
 where the United States District Court held that Florida’s confidentiality rule, as applied to complainants in attorney disciplinary proceedings, violated the First Amendment. 734 F.Supp. 981. After discussing this case law, the Commission concluded that the ABA Delegates should take action to “avoid further constitutional challenges,” and “spar[e] the profession additional negative publicity.” 117 No. 1
 
 Annu. Rep. ABA
 
 553 (1992).
 

 While the ABA House of Delegates did not follow all of the McKay Commission’s recommendations, the Delegates’ decision to amend the source provisions for La. S.Ct. Rule XIX, § 16(A) and (I) indicates that they were influenced by the Commission’s comments on confidentiality. This Court did not incorporate the changes the ABA instituted to the confidentiality rule in 1993, and thus we must now address the First Amendment challenge the ABA sought to avoid.
 

 |UB. The Scope and Application of La. S.Ct. Rule XIX, § 16(A) and (I)
 

 (1) Rule XIX, § 16(A) and (I) Create One Confidentiality Regime
 

 Initially, we note that while there is considerable agreement in the record as to the class of speech that is restricted under these provisions, there is disagreement in the record on two key questions: (1) Do La. S.Ct. Rule XIX, § 16(A) and (I) create two separate confidentiality rules, or do these provisions only require confidentiality when read together,
 
 [22]
 
 and (2) who is bound to maintain confidentiality under either the one rule or two rules? We will begin our analysis of the scope of the confidentiality rule by resolving these two issues.
 

 Regarding the first question, based on a plain reading of the provisions, we
 
 *232
 
 find that La. S.Ct. Rule XIX, § 16(A) and (I) should be viewed as establishing one confidentiality rule for attorney disciplin-áis proceedings, not two. Rule XIX, § 16(A) does not act as an independent rule
 
 [23]
 
 but rather establishes part of a classification scheme that is practically applied by other subsections in § 16.
 
 [24]
 
 Rule XIX, § 16(A) defines what information should be considered nonpublic or confidential as it regards attorney disciplinary matters and notes that the ODC may disclose some information which would otherwise be considered confidential if | |Sany one of four exceptions applies. By contrast, Rule XIX, § 16(B) defines what information should be designated as public information in attorney disciplinary matters. The classification scheme of § 16(A) and § 16(B) is then practically applied by several other subsections in § 16.
 
 See
 
 Rule XIX, § 16(E), § 16(F), and § 16(G). In this opinion, we address only the combination of the definition of confidential information in attorney disciplinary matters in § 16(A), with the requirement found in § 16(1) that “[a]ll participants in a proceeding under these rules shall conduct themselves so as to maintain the confidentiality mandated by this rule.”
 
 [25]
 
 Having clarified the rule in question, we now examine to whom it is addressed.
 

 (2) All “Participants m an Attorney Disciplinary Proceeding are Required to Maintain Confidentiality
 

 As noted above, Rule XIX, § 16(1) requires that “all participants” in an attorney disciplinary proceeding conduct themselves so as to maintain the confidentiality established in § 16(A). A participant in an attorney disciplinary proceeding is simply one who “takes part” in the disciplinary proceeding.
 
 The New Oxford American Dictionary
 
 1246 (2001);
 
 Webster’s Third New International Dictionary
 
 1646 (2002). We note that, in the context of judicial disciplinary proceedings, the Supreme Court has observed that the term “participants” includes “[a]t least” two categories of individuals, the investigatory board members along with the staff employees of the investigatory agency and the “witnesses or putative witnesses not officers or employees of the Commonwealth.”
 
 Landmark Communications, Inc. v. Virginia,
 
 435 U.S. 829, 838 n. 10, 98 S.Ct. 1535, 1541, 56 JjgL.Ed.2d 1 (1978). We believe this observation also holds true in the context of an attorney disciplinary proceeding. Furthermore, all four courts that have completed an in-depth First Amendment analysis of confidentiality rules in the context of an attorney discipline system have found that the term “participants” as
 
 *233
 
 used in these rules also includes the complainant.
 
 See Petition of Brooks,
 
 140 N.H. 813, 678 A.2d 140;
 
 R.M. v. Sup.Ct.,
 
 185 N.J. 208, 883 A.2d 369;
 
 Doe v. Doe,
 
 127 S.W.3d at 730 n. 1;
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. 981. We agree with the findings of our fellow courts on this point.
 
 [26]
 
 Conversely, the respondent is also obviously a participant in the disciplinary process. Finally, we note that counsel hired by any of the aforementioned participants to represent the participant in the attorney disciplinary process must also, themselves, be considered a participant in the disciplinary proceedings.
 
 [27]
 
 Thus, we find that the phrase “participants in a proceeding under these rules,” as used in La. S.Ct. Rule XIX, § 16(1), when combined with § 16(A), must reasonably be interpreted to require the confidentiality of at least the following classes of individuals in attorney disciplinary proceedings: the Attorney Disciplinary Board, including the employees, volunteers, and appointees that staff all of its various subunits such as the Board itself, the Hearing Committees, and the ODC;
 
 [28]
 
 | ^witnesses; complainants; respondents; and finally counsel hired by any of these participants to represent the participant(s) in the attorney disciplinary proceedings.
 
 [29]
 
 The witnesses testifying on behalf of the ODC at the hearing before the commissioner recognized that, on its face, the rule applies to these individuals whether they are lawyers or nonlawyers.
 
 [30]
 

 
 *234
 
 (3) The Impact Upon the Speech of Nonlawyer Participants Must Be Considered in This Constitutional Analysis
 

 At this point in our analysis it seems appropriate to address one of the more novel arguments submitted by the ODC. While disciplinary counsel acknowledges the facial applicability of the confidentiality rule to nonlawyer participants, the agency argues that, in the course of our constitutional review, we should judge the rule as if it only applies to attorneys. The ODC cites no authority in support of this argument. Instead, the ODC first observes that Rule XIX does not appear to prescribe a penalty for either a lawyer or nonlawyer who chooses to violate the | l8confidentiality rule. The agency then argues that while attorneys may potentially be prosecuted via the attorney disciplinary system, when a breach of confidentiality can be construed as a violation of the Rules of Professional Conduct, there is no corresponding enforcement option available to prosecute a nonlawyer who violates the confidentiality rule. In particular, the ODC emphasizes that Rule XIX does not provide for a contempt sanction for a breach of confidentiality. Disciplinary counsel further suggests that for several reasons we would be unable, under our inherent powers, to consider a rule for constructive contempt filed directly with this Court regarding a nonlawyer participant who has breached confidentiality. The ODC then concludes that since the confidentiality rule cannot be enforced as to nonlawyers, the confidentiality rule cannot be viewed as a restriction on the speech of nonlawyers.
 

 While disciplinary counsel argues the confidentiality rule cannot be enforced against nonlawyers, counsel suggests that a plain reading of La. S.Ct. Rule XIX, § 16(A) and (I) authorizes the ODC to “encourage” nonlawyers to maintain confidentiality.
 
 [31]
 
 More accurately, the transcript of the hearing before the commissioner reveals that the ODC has reasonably interpreted the plain language of the confidentiality rule to not only authorize, but, in fact, to require the agency to “encourage” every lawyer and nonlawyer participant to abide by the rule.
 
 [32]
 
 Inciting the Tennessee Supreme Court’s decision in
 
 Doe v. Doe,
 
 the ODC asserts that encouraging nonlawyers to maintain confidentiali
 
 *235
 
 ty is perfectly permissible under the First Amendment and suggests that this encouragement bears no significance to the present constitutional review. 127 S.W.3d 728.
 
 [33]
 

 As we begin to address these arguments, we first note that the ODC’s claims regarding contempt stand on tenuous grounds. The ODC suggests that the absence of a contempt provision in Rule XIX for a breach of the confidentiality rale bears special significance. However, Rule XIX contains a provision which specifically preserves this Court’s authority to use its inherent powers of contempt to enforce the disciplinary rules. Rule XIX, § 6(D) states:
 

 These rules shall not be construed to deny to any court the powers necessary to maintain control over its proceedings. The legislative history of this provision reveals that the “powers necessary” include the power of contempt. As we have explained, the current disciplinary rules were 120adopted from the 1989 ABA MRLDE. The 1989 MRLDE are the codified version of principles developed through several previous ABA publications regarding disciplinary standards. The wording used in La. S.Ct. Rule XIX, § 6(D) was adopted from Model Rule 6(D) of the 1989 MRLDE. Model Rule 6(D) evolved from Rule 1(b) of the ABA Suggested Guidelines for Rules of Disciplinary Enforcement
 
 [34]
 
 which reads:
 

 Nothing herein contained shall be construed to deny to any court such powers as are necessary for that court to maintain control over proceedings conducted before it,
 
 sueh as the power of contempt,
 
 ... (emphasis added).
 

 ABA, Standing Comm. On Professional Discipline, Ctr. For Professional Discipline,
 
 Suggested, Guidelines for Rtdes of Disciplinary Enforcement
 
 1 (3d ed.1977). The other arguments asserted by the ODC in regard to contempt are equally troubled. The ODC has urged that we could not consider a rule for constructive con
 
 *236
 
 tempt filed directly with this Court as to a nonlawyer participant who has breached confidentiality because the legislature has provided no venue
 
 [35]
 
 for such a claim and there is no jurisdiction. The ODC also avers that an individual found guilty of contempt has, under the state constitution, a guaranteed right to appeal. As there is no appeal from this Court within the state judicial system, the ODC argues an individual cannot be held in constructive contempt of this Court.
 
 [36]
 
 We |2inote that the ODC has cited no specific law in support of these claims. In fact, these arguments are in obvious conflict with several constitutional and statutory authorities.
 
 See
 
 LSA-Const. art. 5, § 5(B) (establishing that this Court has exclusive original jurisdiction of lawyer disciplinary proceedings); La.Code Civ. Proc. art. 191 (“A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law”); La.Code Civ. Proc. art. 224(2) (defining constructive contempt as the “[wjillful disobedience of any lawful judgment, order, mandate, writ, or process of the court”); La.Code Civ. Proc. art. 225 (outlining the procedure by which a court of appeal may find an individual in constructive contempt); La. R.S. 13:4611 (which specifically provides that the supreme court may punish a person adjudged guilty of a contempt of court). Furthermore, we note that in 2003 the Tennessee Supreme Court addressed arguments similar to those presented here by the ODC and held that its confidentiality rule could be enforced against a nonlawyer complainant in an attorney disciplinary proceeding via a charge of contempt filed directly with that court.
 
 Doe v. Board of Professional Responsibility,
 
 104 S.W.3d 465 (Tenn.2003). However, given our findings below, we need not proceed beyond these initial observations regarding the contempt arguments.
 
 [37]
 

 Regardless of whether or not a nonlawyer may be held in contempt of court for a breach of confidentiality, Supreme Court precedent directs this Court toj^analyze the constitutionality of the confidentiality rule in light of its effects on both nonlawyers and lawyers. First, we note that the Supreme Court has indicated that a statute’s facial application must be given con
 
 *237
 
 siderable weight on the constitutional scales in the context of a First Amendment analysis.
 
 See Board of Airport Corn’rs of City of Los Angeles v. Jews for Jesus, Inc.,
 
 482 U.S. 569, 574-577, 107 S.Ct. 2568, 2572-2573, 96 L.Ed.2d 500 (1987);
 
 Talley v. California,
 
 362 U.S. 60, 63-64, 80 S.Ct. 536, 538, 4 L.Ed.2d 559 (I960).
 
 [38]
 
 Our confidentiality rule, on its face, does not distinguish between a nonlawyer or lawyer participant. A reasonable nonlawyer participant reading our rule would inevitably conclude that he or she is bound to maintain the silence it commands.
 

 Second, we must recognize that when a nonlawyer participant in an attorney disciplinary process is confronted with the plain terms of the confidentiality rule, its strict command that he or she should maintain silence carries with it an implicit threat of sanction. A reasonable nonlaw-yer would not assume that the highest court | ¾⅛ the state has adopted a rule which we cannot enforce.
 
 [39]
 
 Indeed, the studious citizen who investigated the matter would confront several authorities, which we noted in our discussion on contempt, that would suggest that this Court has the requisite power to enforce the mandate of confidentiality. Common sense dictates that while some nonlawyer participants may challenge the plain language of the rule and the authority of this Court, most will simply choose to suppress speech in order to avoid any potential penalty. The record confirms this. As we discuss further below, at the hearing before the commissioner the Chief Disciplinary Counsel, Mr. Plattsmier, stated that the vast majority of nonlawyer participants obey the confidentiality rule. In our First Amendment analysis, we cannot ignore these effects.
 
 Cf. Dombrowski v. Pfister,
 
 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965) (“For ‘(t)he threat of sanctions may deter * * * [speech] almost as potently as the actual application of sanctions. * * * '") (quoting
 
 NAACP v. Button,
 
 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)).
 

 Finally, our review of the jurisprudence of the Supreme Court indicates that a violation of the First Amendment may be found when the record demonstrates that
 
 *238
 
 the practical effect of a government action is the suppression or chilling of speech.
 
 See FEC v. Massachusetts Citizens for Life, Inc.,
 
 479 U.S. 238, 255, 107 S.Ct. 616, 626, 93 L.Ed.2d 539 (1986) (plurality opinion) (“The fact that the statute’s practical effect may be to discourage protected speech is sufficient to characterize [it] as an infringement on First Amendment activities”);
 
 Meese v. Keene,
 
 481 U.S. 465, 488-489, 107 S.Ct. 1862, 1875, 95 L.Ed.2d 415 (1987) UABlackmun, J-, dissenting) (same).
 
 [40]
 
 A review of the transcript of the hearing before the commissioner leads us to the conclusion that the practical effect of the confidentiality rule is the suppression or chilling of the speech of nonlaw-yers, as well as lawyers.
 

 As we have noted, see
 
 supra
 
 note 32, in accordance with a plain reading of the confidentiality rule, the ODC has adopted several procedures in order to “encourage” both nonlawyer and lawyer participants to maintain the confidentiality mandated by the rule. These procedures invoke the authority of this Court and make full use of the forceful language of the rule to ensure confidentiality is maintained. Objectively viewed, these procedures act as de facto enforcement mechanisms which effectively suppress or chill speech.
 

 The following description of these procedures is taken from the transcript of the hearing before the commissioner. We note that it is the routine policy of the ODC to advise all participants, including nonlawyers, both orally and in writing, that they are bound by the confidentiality rule. Moreover, on the standard complaint form used by the disciplinary agency, just above where the complainant
 
 [41]
 
 is to affix their signature, the following language is bolded for added effect:
 

 [T]he rules of the Supreme Court of Louisiana make all disciplinary proceedings prior to the filing of formal charges confidential. By submitting this complaint you are agreeing that you will conduct 12Syourselves so as to maintain the confidentiality mandated by the Rule
 

 [[Image here]]
 

 After reading this language into the record, Mr. Plattsmier was asked, “[s]o [complainants are] encouraged to maintain the confidentiality?” He replied, “[t]hey are told that it is expected of them.” Mr. Plattsmier
 
 [42]
 
 stated:
 

 
 *239
 
 [W]e tell [nonlawyer and lawyer complainants] that this is what the Supreme Court Rule is, and they are expected as participants in the process to maintain the confidentiality that’s mandated by the Rule.
 

 [[Image here]]
 

 [C]omplainants who are non-lawyers and witnesses who are non-lawyers are told, ‘this is what’s expected.’ It’s an important process, and they’re told that, and I have to tell you, they comply.
 

 In the quote above, and several other times throughout the hearing Mr. Platts-mier confirmed that almost all lawyer and nonlawyer participants respond to the disciplinary agency’s commands and abide by the confidentiality rule. In particular, we note the following interchange between counsel for the ODC and the Chief Disciplinary Counsel, Mr. Plattsmier:
 

 [Counsel for the ODC]: Has there been — has the confidentiality been most usually followed and subscribed to by the laypersons in the [discipline] system?
 

 [Mr. Plattsmier, Chief Disciplinary Counsel]: Yes, sir.
 

 [Counsel for the ODC]: Have there been isolated instances, frequent instances, occasional instances, no instances at all where there have been, perhaps, some, sort of, a problem -with confidentiality?
 

 [Mr. Plattsmier, Chief Disciplinary Counsel]: Isolated instances. They can usually be pretty quickly addressed.
 

 Both Mr. Plattsmier and Mr. Shea offered testimony as to the procedures used to address the “isolated instance” of a nonlawyer breach of confidentiality, I^According to their testimony, the ODC reacts by sending letters and/or by delivering a verbal communication via an in-person visit
 
 [43]
 
 or by placing a phone call to the nonlawyer. According to Mr. Plattsmier, these procedures usually resolve the problem.
 

 Mr. Shea testified that he remembered instances during his term of service on the Disciplinary Board where a nonlawyer complainant breached the confidentiality rule. In response to these actions, Mr. Shea stated that he could recall agency personnel, “actually running and saying you’re to maintain the confidentiality of this proceeding ...” He also stated that letters were at times sent out to nonlaw-yers who had reportedly breached the confidentiality rule. According to Mr. Shea, the letters notified the recipient that the Board had received reports that they may have breached confidentiality, emphasized that the proceedings were confidential, and then asked the individual to cease the suspect communications.
 
 [44]
 

 Mr. Plattsmier testified that at times nonlawyer complainants have become frustrated with the attorney disciplinary process and have threatened to go to the press. He can recall calling these nonlawyers, informing them of their rights to appeal within the disciplinary system, and then emphasizing the nonlawyer’s obligation under our rule to maintain the con
 
 *240
 
 fidentiality of the proceedings. Mr. Plattsmier stated, “I can point them to confidentiality and say, ‘[t]he Rule requires you to participate in this process [and] that [you are] mandated to maintain the confidentiality ... ”’ Counsel for Mr. Warner and Mr. Rando both asked Mr. Plattsmier if, during these phone conversations, he had ever informed nonlawyers 187that they are not subject to sanction if they choose to violate the confidentiality rule. Mr. Plattsmier replied that he did not reveal this information to the nonlaw-yers.
 

 In sum, the record demonstrates that the practical impact of the rule and the procedures designed to enforce it is the suppression of the speech of both lawyer and nonlawyer participants.
 
 [45]
 
 Mr. Platts-mier stated that in the few isolated instances where a nonlawyer has breached or threatens to breach confidentiality, the employment of one of the procedures noted above has usually secured the continued silence of the nonlawyer. This practical impact cannot be ignored in our constitutional analysis.
 

 Our observations on this point are not designed to repudiate or disparage the disciplinary authorities. As the witnesses for the ODC rightly noted at the hearing before the commissioner, on its face the confidentiality rule applies to both lawyers and nonlawyers. The rule is designed not simply to encourage, but to require the confidentiality of all participants. The ODC has simply attempted to faithfully fulfill its duty to enforce the plain meaning of the provision. We recognize that the de facto enforcement measures discussed above simply emphasize the text of the confidentiality rule itself. It is the rule, not the disciplinary agency, which is at the root of the aforementioned procedures. It is the rule, cloaked in the authority of this Court, which leads the nonlawyer to comply with the ODC’s commands and suppress his or her speech.
 

 |2SFor the foregoing reasons, as we proceed in our constitutional analysis, we must consider the confidentiality rule’s impact on the speech of both nonlawyer and lawyer participants.
 

 (4) The Class of Information Suppressed by the Confidentiality Rule
 

 The confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) requires participants to conduct themselves so as to maintain the confidentiality of the “proceeding.” Thus a participant is barred from divulging information related to any aspect of their “involvement with the disciplinary process,” but they are free to divulge “information gained independently of the disciplinary process.”
 
 See Petition of Brooks,
 
 678 A.2d at 142-143 (interpreting a rule which generally provided that all “records and proceedings” of the attorney discipline system shall be confidential).
 

 For example, the typical complainant is barred from revealing the following information:
 

 ... the fact that a complaint [has] been filed, what information or testimony the complainant provided the [disciplinary agency], any action taken by the [disciplinary agency] in response to the complaint, and any information acquired by the complainant through interaction with the [disciplinary agency].
 

 
 *241
 

 Id.,
 
 at 143. However, the typical complainant would not be barred from speaking about “the underlying facts and substance of his complaint[ ].”
 
 Id.
 

 While the class of information suppressed may seem unimportant to some, we cannot allow this perception to influence our First Amendment analysis. As the Supreme Court has explained, “We cannot be influenced, moreover, by the perception that the regulation in question is not a major one because the speech is not very important. The history of the law of free expression is one of vindication in cases involving speech that many citizens may find shabby, offensive, or even ugly.”
 
 United States v. Playboy Entertainment Group, Inc.,
 
 529 U.S. 803, 826, 1⅝,120 S.Ct. 1878, 1893, 146 L.Ed.2d 865 (2000). The First Amendment protects, “[a]ll ideas having even the slightest redeeming social importance.”
 
 Roth v. United States,
 
 354 U.S. 476, 484, 77 S.Ct. 1304, 1309,1 L.Ed.2d 1498 (1957).
 

 Moreover, we note that the New Hampshire Supreme Court found that a rule which required participants to maintain the confidentiality of attorney disciplinary proceedings suppressed “speech traditionally accorded the most solicitous protection of the first amendment; namely, criticism of the government’s performance of its duties.”
 
 Petition of Brooks,
 
 678 A.2d at 143 (citing several Supreme Court decisions). The court explained that a complainant wishing to criticize the disciplinary agency’s handling of a disciplinary matter, in many cases, was permanently barred from doing so because disclosure of the mere fact that an investigation took place, as well as the specific actions of the committee, would violate the confidentiality of the proceeding.
 
 [46]
 

 Id.
 
 These observations also hold true in our present disciplinary system.
 

 (5) In Practice, A Requirement of Perpetual Confidentiality In the Majority of Cases
 

 Under La. S.Ct. Rule XIX, § 16(A) and (I), a participant in the attorney disciplinary process is required to maintain the confidentiality of the proceedings until the “filing and service of formal charges.” Since the majority of disciplinary complaints are reviewed and addressed without the filing of formal charges, the rule, in practice, requires participants in the majority of cases to maintain confidentiality for all time.
 

 lanThe record shows that the majority of disciplinary complaints are either dismissed or addressed using private discipline. The testimony tendered at the hearing before the commissioner revealed that approximately 3,000 to 3,200 complaints are filed with the ODC annually. Mr. Plattsmier testified that the ODC dismisses a substantial percentage of these complaints, finding either that they fail to qualify as a violation of the Rules of Professional Conduct, that there is not enough evidence to support a good faith prosecution, or that the complaint has “little or no merit.” Mr. Shea stated that a significant number of the complaints that are not dismissed are addressed using private discipline, such as a private admonition or a diversion to one of several educational programs.
 
 See
 
 La. S.Ct. Rule XIX, § 10(A)(5) and (A)(9). The ODC is author
 
 *242
 
 ized to pursue private discipline when the disciplinary agency finds evidence of minor misconduct with “little or no injury to a client, the public, the legal system, or the profession.” Rule XIX, § 10(A)(5);
 
 See also
 
 Rule XIX, § 10(A)(9). When a complaint is dismissed or private discipline is imposed formal charges are never filed, and thus the participants in these disciplinary matters must maintain the confidentiality of the proceedings in perpetuity.
 

 Furthermore, though La. S.Ct. Rule XIX, § 16(A)(1) authorizes a respondent attorney to waive the confidentiality of the proceedings, the testimony tendered at the hearing before the commissioner suggests that such a waiver rarely occurs.
 
 [47]
 
 The reason for the rare exercise of this right is obvious. Given the typical situation, where a complaint is dismissed or private discipline is imposed, a respondent’s waiver of confidentiality would remove an otherwise perpetual shield against public scrutiny of the disciplinary complaint and its final disposition.
 

 |m(6) La. S.Ct. Rule XIX, § 16(A) and (I) Effectively Suppresses a Substantial Amount of Speech
 

 In sum, it is clear that the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) effectively suppresses a substantial amount of speech.
 
 [48]
 
 Wfiiile the rule addresses itself to a relatively narrow class of information, the lack of a practical temporal limit on the speech ban, coupled with the sheer number of individuals to whom the rule applies, requires us to acknowledge that the regulation effects a significant amount of speech. The rule does not simply suppress information regarding disciplinary proceedings during the investigation of a complaint. On its face, the rule directs that participants in the thousands of disciplinary matters that are annually either dismissed or addressed using private discipline must maintain the confidentiality of those proceedings for all time. According to Mr. Plattsmier’s testimony, both lawyers and nonlawyers obey the confidentiality rule.
 
 [49]
 
 
 *243
 
 Moreover, while the suppression of most any truthful speech |S2is suspect under the First Amendment, the rule at issue sometimes impairs speech critical of the ODC’s functions, triggering heightened First Amendment concerns.
 

 Now that we have completed our analysis of the history, scope, and application of the confidentiality rule, we must now determine whether the rule is constitutional.
 

 III. Determining the Appropriate Level of Constitutional Scrutiny
 

 The Supreme Court has indicated that in order to determine whether the confidentiality rule is constitutional, we must first determine whether the regulation is content-based or content-neutral.
 
 City of Ladue v. Gilleo,
 
 512 U.S. 43, 59, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36 (1994) (O’Con-nor, J., concurring) (citing seven diverse free speech cases Justice O’Connor wrote, “[t]he normal inquiry that our doctrine dictates is, first, to determine whether a regulation is content based or content neutral, and then, based on the answer to that question, to apply the proper level of scrutiny”). The distinction between content-based and content-neutral laws plays a crucial role because the Supreme Court employs decidedly different modes of analysis to assess the constitutionality of laws in each category, subjecting content-based regulations to a far greater degree of scrutiny. Thus, we will review the principles the Supreme Court has established regarding this classification scheme and apply them to the question at hand.
 

 A. Content-Neutral Laws
 

 Drawing on prior decisions, the Supreme Court in
 
 Boos v. Barry
 
 stated that content-neutral speech restrictions are “those that are justified without reference to the content of the regulated speech.” 485 U.S. 312, 320,108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988) (plurality opinion) (quotations and citations omitted);
 
 See also Playboy Entertainment Group,
 
 529 U.S. at 811, 120 S.Ct. at 1885. The Court has l^also held that, as a general rule, “laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.”
 
 Turner Broadcasting System, Inc. v. FCC,
 
 512 U.S. 622, 643, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497 (1994). Content-neutral laws are aimed at the noncommunicative impact of expressive conduct. Laurence H. Tribe,
 
 American Constitutional Law
 
 § 12-2, 790-792 (2d ed.1988). They are allowed to stand in certain circumstances because “various methods of speech, regardless of their content, may frustrate legitimate governmental goals.”
 
 Consolidated Edison Co. v. Public Service Comm’n,
 
 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). For example, in order to avoid undue disturbance of nearby residential areas a government entity may adopt a rule that limits sound levels at a concert arena,
 
 [50]
 
 bars sound trucks from broadcasting in a loud and raucous manner on the streets,
 
 [51]
 
 or prohibits Saturday morning
 
 *244
 
 parades.
 
 [52]
 

 “[Regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny.”
 
 Turner Broadcasting,
 
 512 U.S. at 642, 114 S.Ct. at 2459. The Court has phrased its First Amendment intermediate scrutiny test in two slightly different ways. John E. Nowak & Ronald D. Rotunda,
 
 Constitutional Law
 
 § 16.47, 1320 (7th ed.2004). First, the Court has enunciated the general principle that government regulation is permissible: “if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than |¾4⅛ essential to the furtherance of that interest.”
 
 United States v. O'Brien,
 
 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968);
 
 See also Turner Broadcasting,
 
 512 U.S. at 662, 114 S.Ct. at 2469. “The second method of analysis elaborates on this general principle by restating it in terms of a three-part test.” Nowak,
 
 supra
 
 at 1320. The Court will uphold a reasonable restriction on the time, place, and manner of speech if the government can show: (1) that the restriction is justified without reference to the content of the regulated speech; (2) that it is narrowly tailored to serve a significant governmental interest; and (3) that the regulation leaves open ample alternative channels for communication of the information.
 
 See Ward v. Rock Against Racism,
 
 491 U.S. 781, 791, 109 S.Ct. 2746, 2753-2754, 105 L.Ed.2d 661 (1989) (citing
 
 Clark v. Community for Creative Non-Violence,
 
 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).
 

 B. Content-Based Laws
 

 Regarding the identification of content-based laws, the Supreme Court has stated that, “[a]s a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.”
 
 Turner Broadcasting,
 
 512 U.S. at 643, 114 S.Ct. at 2459.
 
 [53]
 
 Content-based |aslaws include both regulations that target
 
 *245
 
 speech based on the viewpoints expressed and regulations that target speech on the basis of subject matter or topic. As the Court expressed in
 
 Consolidated Edison:
 

 The First Amendment’s hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic. As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.
 

 447 U.S. at 537, 100 S.Ct. at 2333 (internal quotations omitted and citation omitted);
 
 See also Burson v. Freeman,
 
 504 U.S. 191, 197, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5 (1992) (plurality opinion);
 
 Accord Police Dept, of the City of Chicago v. Mosley,
 
 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).
 
 [54]
 

 Supreme Court jurisprudence provides several examples of content-based restrictions. We have selected three of these cases to illustrate the application of the principles explained above. In
 
 Burson,
 
 the Supreme Court considered the constitutionality of a Tennessee statute which prohibited the solicitation of votes and the display or distribution of campaign materials within 100 feet of a polling place entrance. 504 U.S. at 193-194, 112 S.Ct. 1846. The Court held the statute was a content-based restriction because the law applied only to speech related to a specific ^subject matter, it only applied to speech regarding political campaigns.
 
 Id.,
 
 504 U.S. at 197-198, 112 S.Ct. 1846. In
 
 Consolidated Edison,
 
 the Supreme Court evaluated the constitutionality of a policy adopted by the state Public Service Commission. 447 U.S. at 532-533, 100 S.Ct. 2326. The commission prohibited utility companies from inserting informational flyers into customers’ bills that discussed “ ‘controversial issues of public policy’ ” but allowed bill inserts which addressed topics that were “not ‘controversial issues of public policy.’ ”
 
 Id.,
 
 447 U.S. at 533,100 S.Ct. 2326. The specific bill insert which triggered the suit advocated for the use of nuclear power.
 
 Id.,
 
 447 U.S. at 532, 100 S.Ct. 2326. The commission argued its policy was constitutional because it applied to all bill inserts discussing nuclear power, whether pro or con.
 
 Id.,
 
 447 U.S. at 537, 100 S.Ct. 2326. The Supreme Court held the policy was a content-based regulation which discriminated between categories of speech on the basis of subject matter.
 
 Id.,
 
 447 U.S. at 537-541, 100 S.Ct. 2326. Finally, in
 
 Simon & Schuster,
 
 the Supreme Court reviewed New York’s “Son of Sam” law. 502 U.S. at 107-111, 112 S.Ct. 501. This law required that any money owed under contract to an accused or convicted criminal for a book or other work describing his or her crime be deposited into an escrow account.
 
 Id.
 
 These funds were then made available to victims of the crime who brought civil actions and secured money judgments against the accused or convicted criminal.
 
 Id.
 
 The Court held
 
 *246
 
 the law was a content-based regulation stating:
 

 [The “Son of Sam” law] singles out income derived from expressive activity for a burden the State places on no other income, and it is directed only at works with a specified content * * * the statute plainly imposes a financial disincentive only on speech of a particular content.
 

 Id.,
 
 502 U.S. at 116,112 S.Ct. 501.
 

 (1) Content-Based Laws are Presumptively Invalid and Subject to Strict Scrutiny
 

 Regulations that are content-based are “presumptively invalid.”
 
 R.A.V. v. City of St. Paul,
 
 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 |S7(1992). Except for a few well-defined exceptions, which do not apply in this case,
 
 [55]
 
 a content-based regulation will survive a constitutional challenge only if it passes the well-established two-part strict scrutiny test. Under strict scrutiny the government bears the burden of proving the constitutionality of the regulation by showing (1) that the regulation serves a compelling governmental interest, and (2) that the regulation is narrowly tailored to serve that compelling interest.
 
 Playboy Entertainment Group,
 
 529 U.S. at 813, 120 S.Ct. at 1886;
 
 R.A.V.,
 
 505 U.S. at 395-396, 112 S.Ct. at 2549-2550;
 
 Simon & Schuster,
 
 502 U.S. at 118, 112 S.Ct. at 509;
 
 Consolidated Edison,
 
 447 U.S. at 540, 100 S.Ct. at 2335 (the government must show that the regulation is a “precisely drawn means” of serving a compelling state interest).
 

 (2) Exceptions to the General Rules of Content-Based Regulation
 

 In
 
 R.A.V.,
 
 the Supreme Court recognized some limited, well-defined exceptions to the general rules for content-based regulations. 505 U.S. at 382-384, 112 S.Ct. at 2542-2543. The Court explained that our society has long recognized that obscenity, defamation, and fighting words constitute proscribable speech. This speech is of only “slight social value as a step to truth.”
 
 Id.,
 
 505 U.S. at 383, 112 S.Ct. 2538 (quotations and citation omitted). Thus, these categories of expression receive far less First Amendment protection.
 
 Id.,
 
 505 U.S. at 383-396, 112 S.Ct. 2538. The parties have not argued, and we do not find, that the confidentiality rule is governed by any of these exceptions. The application of the confidentiality rule is in no way limited to these proscribable categories of speech.
 

 The ODC argues, however, that the Supreme Court’s decision in
 
 Seattle Times Co. v. Rhinehart
 
 establishes another exception to the general rules for content-based regulations of speech and should lead this Court to assess the | ^constitutionality of the confidentiality rule under an intermediate level of scrutiny. 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
 
 [56]
 
 Accordingly, we will briefly review this decision.
 

 
 *247
 
 In
 
 Rhinehart,
 
 the Supreme Court considered the constitutionality of a protective order issued by a trial court, on a showing of good cause, which barred the defendant in the civil suit from publicly divulging a segment
 
 [57]
 
 of the information obtained through the pretrial discovery process.
 
 Id.,
 
 467 U.S. at 24-27,104 S.Ct. 2199. The protective order in question was issued in accordance with a rule of civil procedure which was virtually identical to its counterpart in the federal rules and to similar rules in many states.
 
 Id.,
 
 467 U.S. at 80 n. 14, 104 S.Ct. 2199; 467 U.S. at 26 n. 7, 104 S.Ct. 2199; 467 U.S. at 29, 104 S.Ct. 2199. As a threshold question, the Court had to determine the level of constitutional scrutiny which would apply to orders issued under these rules.
 
 Id.,
 
 467 U.S. at 32-34, 104 S.Ct. 2199; 467 U.S. at 36, 104 S.Ct. 2199. We note the protective order in question clearly targeted speech based on its content. Not surprisingly, petitioners argued that the protective order should be subject to strict scrutiny.
 
 Id.,
 
 467 U.S. at 30-31, 104 S.Ct. 2199. However, the Court rejected this standard, stating “the rule urged by petitioners |a9would impose an unwarranted restriction on the duty and discretion of a trial court to oversee the discovery process.”
 
 Id.,
 
 467 U.S. at 31, 104 S.Ct. 2199. Instead, the Court held that the protective order at issue in
 
 Rhinehart,
 
 and by logical extension all those like it, would be subjected to a form of intermediate scrutiny.
 
 [58]
 

 Id.,
 
 467 U.S. at 32,104 S.Ct. 2199. The Court justified the decision to apply lesser scrutiny on two grounds: (1) the nature of the information suppressed, and (2) the unique role the trial court plays in managing discovery.
 
 [59]
 

 Id.,
 
 467 U.S. at 32-36, 104 S.Ct. 2199. Addressing both of these points, the Supreme Court stated that:
 

 A litigant has no First Amendment right of access to
 
 information made available only for purposes of trying his suit ...
 
 Thus,
 
 continued court control
 
 over the discovered information does not raise
 
 *248
 
 the same specter of government censorship that such control might suggest in other situations, (emphasis added).
 

 Id.,
 
 467 U.S. at 32,104 S.Ct. 2199 (citations omitted). As to the unique role of the trial court, the Court further stated:
 

 The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.
 

 \AI)Id.,
 
 467 U.S. at 36, 104 S.Ct. 2199. The Supreme Court’s holding in
 
 Rhinehart
 
 does not govern the question presently before this Court. We are not presented here with a limited protective order issued by an impartial authority on a finding of “good cause” after considering all of the issues and competing interest in a particular case. We herein review the constitutionality of a rule which generally prohibits all participants in all attorney disciplinary proceedings from divulging any information regarding the attorney disciplinary proceedings in which they are involved. Furthermore, the confidentiality rule suppresses a broader class of speech than the protective order at issue in
 
 Rhinehart,
 
 see
 
 supra
 
 note 56. In other words, it is quite plain that the two key elements in
 
 Rhine-hart
 
 which jointly triggered a lower degree of scrutiny are not present in this case: the considered decision of a trial court based on “good cause” shown in a particular case and a protective order limited to information obtained through pretrial discovery. Thus, the holding in
 
 Rhinehart
 
 does not govern our present inquiry. Accordingly, should we find that the confidentiality rule is a content-based regulation of speech, the general rules for content-based regulations will apply, and we will be required to review the confidentiality rule under strict scrutiny.
 

 C. The Confidentiality Rule is a Content-Based Regulation
 

 Applying the principles established in the jurisprudence described above to the case at hand, we must conclude that the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) is a content-based regulation of speech subject to strict scrutiny. We note that “[a] determination of what speech is subject to the confidentiality requirement cannot be made without reference to the content of the speech.”
 
 Doe v. Doe,
 
 127 S.W.3d at 732;
 
 See Playboy Entertainment Group,
 
 529 U.S. at 811, 120 S.Ct. at 1885 (“[t]he speech in question is defined by its content”). Whether an individual may exercise their free speech rights under the 141 confidentiality rule “depends entirely on whether their speech is related to” a particular subject matter, i.e., the attorney disciplinary proceedings.
 
 Burson,
 
 504 U.S. at 197, 112 S.Ct. at 1850. This regulation prohibits “public discussion of an entire topic.”
 
 Id.; Consolidated Edison,
 
 447 U.S. at 537,100 S.Ct. at 2333.
 

 The confidentiality rule is not a content-neutral regulation. It cannot be likened to a regulation that seeks to protect the peaceful habitation of nearby dwellings by limiting the decibel level of a concert or restricting the audio output of vehicles traveling through neighborhoods. It cannot be said that the confidentiality rale “involves an incidental interference with speech merely as a byproduct of the government’s effort to regulate some evil unconnected with the content of the affected speech.”
 
 Lind v. Grimmer,
 
 859 F.Supp. 1317,1323 n. 4 (D.Haw.1993) (summarizing and citing
 
 Ward,
 
 491 U.S. at 797-801, 109 S.Ct. at 2757-2759). In fact, in an attempt to justify this regulation, the ODC has asserted several interests explicitly based on the effects of the content of the abridged speech, such as injury to professional reputation. Accordingly, we must
 
 *249
 
 recognize that the confidentiality provisions are not “justified without reference to the content of the regulated speech.”
 
 Playboy Entertainment Group,
 
 529 U.S. at 811, 120 S.Ct. at 1885 (quotations and citations omitted);
 
 Boos,
 
 485 U.S. at 820, 108 S.Ct. at 1168 (quotations and citations omitted).
 

 Our finding that the confidentiality rule is a content-based restriction of speech subject to strict scrutiny is in accord with the findings of the four courts that have previously tendered an in-depth First Amendment analysis of a confidentiality rule in the context of an attorney disciplinary system.
 
 [60]
 
 Our decision is also in agreement with the decisions of several federal courts which have | ^considered constitutional challenges to confidentiality rules applied in the context of investigations conducted by government agencies.
 
 [61]
 

 IV. Strict Scrutiny Standards
 

 A. Generally
 

 As we have explained, since the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) is properly classified as a content-based restriction of speech, binding Supreme Court precedent requires this Court to subject the rule to the “most exacting” constitutional scrutiny.
 
 Boos,
 
 485 U.S. at 321-322, 108 S.Ct. at 1164.
 

 The confidentiality rule may only be sustained if it satisfies the well-established two-part strict scrutiny test. This test requires the state to prove: (1) that the regulation serves a compelling governmental interest,
 
 [62]
 
 and (2) that the regulation is narrowly tailored to serve that compelling interest.
 
 [63]
 

 Republican \^Party of Minn. v. White,
 
 536 U.S. 765, 774-775, 122
 
 *250
 
 S.Ct. 2528, 2534, 153 L.Ed.2d 694 (2002);
 
 Playboy Entertainment Group,
 
 529 U.S. at 813,120 S.Ct. at 1886;
 
 Burson,
 
 504 U.S. at 198, 112 S.Ct. at 1851;
 
 R.A.V.,
 
 505 U.S. at 395-396, 112 S.Ct. at 2549-2550;
 
 Simon & Schuster,
 
 502 U.S. at 118, 112 S.Ct. at 509;
 
 Boos,
 
 485 U.S. at 321-322, 108 S.Ct. at 1164;
 
 Consolidated Edison,
 
 447 U.S. at 540, 100 S.Ct. at 2335 (the government must show that the regulation is a “precisely drawn means” of serving a compelling state interest).
 

 We must approach the strict scrutiny analysis “with the posture the Supreme Court has long prescribed for this inquiry: ‘it is the rare case in which ... a law survives strict scrutiny.’ ”
 
 Republican Party of Minn. v. White,
 
 416 F.3d 738, 763 n. 14 (8th Cir.2005) (quoting
 
 Burson,
 
 504 U.S. at 211, 112 S.Ct. at 1857);
 
 See also Playboy Entertainment Group,
 
 529 U.S. at 818, 120 S.Ct. at 1889 (“It is rare that a regulation restricting speech because of its content will ever be permissible.”). A law subject to strict scrutiny because it regulates speech based on its content is presumptively invalid, “and the Government bears the burden to rebut that presumption.”
 
 Playboy Entertainment Group,
 
 529 U.S. at 817,120 S.Ct. 1878.
 

 We will first review the standards governing each prong of the strict scrutiny analysis, and then we will proceed to subject the confidentiality rule to strict scrutiny.
 

 B. The Compelling Interest Requirement
 

 The first prong of the strict scrutiny analysis requires the identification of a compelling governmental interest which is served by the regulation in question. |44The state’s role in this inquiry is to assert an interest served by the regulation at issue and to submit evidence to establish the compelling nature of that interest. The court must then determine whether the record effectively demonstrates that the asserted interest qualifies as a “compelling” one as a matter of law.
 

 As noted above, the first component of the compelling interest analysis requires the government to assert an interest served by the regulation in question, such as the need to address a perceived problem, protect a group from harm, or cure some ill in society. However, “[m]ere speculation of harm does not constitute a compelling state interest.”
 
 Consolidated Edison,
 
 447 U.S. at 543, 100 S.Ct. at 2336. The state must effectively demonstrate “that the harms it recites are real and that its restriction [of speech] will in fact alleviate them to a material degree”
 
 Playboy Entertainment Group,
 
 529 U.S. at 817,120 S.Ct. at 1888 (quoting
 
 Edenfield v. Fane,
 
 507 U.S. 761, 770-771, 113 S.Ct. 1792, 1800,123 L.Ed.2d 543 (1993)). “The quantum of empirical evidence needed to satisfy heightened judicial scrutiny ... will vary up or down with the novelty and plausibility of the justification raised.”
 
 Nixon v. Shrink Missouri Government PAC,
 
 528 U.S. 377, 391, 120 S.Ct. 897, 906, 145 L.Ed.2d 886 (2000).
 

 Once the state has asserted its interest and presented its evidence, the court must
 
 *251
 
 determine whether the asserted state interest qualifies as a “compelling interest.” However, “[precisely what constitutes a ‘compelling interest’ is not easily defined.”
 
 White,
 
 416 F.3d at 749;
 
 See also Illinois State Bd. of Elections v. Socialist Workers Party,
 
 440 U.S. 173, 188-189, 99 S.Ct. 983, 992, 59 L.Ed.2d 230 (1979) (Blackmun, J., concurring) (“I have never been able fully to appreciate just what a ‘compelling state interest’ is.”);
 
 Eu v. San Francisco Cty. Democratic Cent. Comm.,
 
 489 U.S. 214, 234, 109 S.Ct. 1013, 1026, 103 L.Ed.2d 271 (1989) (Stevens, J., concurring) (same). “ ‘[NJowhere in the text of the Constitution, or in |4Sits plain implications, is there any guide for determining what is a ‘legitimate’ state interest, [compelling or otherwise].’ ”
 
 White,
 
 416 F.3d at 749 (quoting
 
 Weber v. Aetna Cas. & Sur. Co.,
 
 406 U.S. 164, 181, 92 S.Ct. 1400, 1410, 31 L.Ed.2d 768 (1972) (Rehnquist, J., dissenting)). “[W]hile decisions of the Supreme Court and opinions of various members of the Court have frequently described or treated governmental interests as compelling, few have explained why.” Stephen E. Gottlieb,
 
 Compelling Governmental Interests: An Essential but Unanalyzed Term in Constitutional Adjudication,
 
 68 B.U. L.Rev. 917, 932 (1988). Attempts to define the term have inevitably used equally vague, superlative terminology.
 
 White,
 
 416 F.3d at 749. Indeed, “the Court’s treatment of [compelling] governmental interests has become largely intuitive, a kind of ‘know it when I see it’ approach similar to Justice Stewart’s explanation of pornography.” Gottlieb,
 
 supra
 
 at 937. Thus, unless the Supreme Court has provided some guidance through prior decisions as to whether a particular state interest is compelling, a court has few standards to direct its decision in this regard.
 

 A small measure of guidance may be obtained by contrasting “compelling interest” with the other standards utilized by the Court during constitutional review. The “compelling” interest required under strict scrutiny is generally something more than the “substantial” or “important” interest required under intermediate scrutiny, which is greater than the “legitimate” interest required under a rational basis review.
 
 See generally
 
 John E. Nowak & Ronald D. Rotunda,
 
 Constitutional Law
 
 § 14.3, 687-690 (7th ed.2004).
 
 [64]
 
 Though each of these | ^additional terms are also purposefully vague, the hierarchal scheme is somewhat useful for our present analysis. A state actor cannot rely on legitimate or even important or substantial justifications for its regulation to survive strict scrutiny; it must demonstrate a “compelling” reason for restricting speech.
 
 *252
 
 The Court communicates this same concept when it describes compelling interests as interests of the “highest order.”
 
 White,
 
 536 U.S. at 780, 122 S.Ct. 2528 (quoting
 
 The Florida Star v. B.J.F.,
 
 491 U.S. 524, 541-542, 109 S.Ct. 2603, 2613, 105 L.Ed.2d 443 (1989) (Scalia, J., concurring)).
 

 Finally, the court’s analysis under the narrowly tailored inquiry may inform the court’s decision as to the compelling interest question. One of the factors to be considered under the narrowly tailored analysis is whether a regulation is underin-clusive.
 
 [65]
 
 That is, whether the regulation “fails to restrict a significant amount of speech that harms the government interest to about the same degree as does the restricted speech.” Eugene Volokh,
 
 Freedom of Speech, Permissible Tailoring and Transcending Strict Scrutiny,
 
 144 U.Penn. L.Rev. 2417, 2423 (1996) (collecting cases). If the court finds that a regulation is un-derinclusive, this weighs against a finding that the rule satisfies either prong of strict scrutiny. This is because underinclusiveness often raises serious doubts that the state is in fact serving the significant interest which the state invokes in support of affirmance.
 
 The Florida Star,
 
 491 U.S. at 540, 109 S.Ct. at 2612-2613;
 
 See also City of Ladue \mv. Gilleo,
 
 512 U.S. 43, 52-53, 114 S.Ct. 2038, 2044,129 L.Ed.2d 36 (1994) (“Exemptions from an otherwise legitimate regulation of a medium of speech ... may diminish the credibility of the government’s rationale for restricting speech in the first place.”).
 
 [66]
 
 We note that in several cases, a finding that a regulation was underinclusive as to a particular interest led the Court to hold that the state could not rely on that particular interest to justify the regulation under strict scrutiny.
 
 The Florida Star,
 
 491 U.S. at 540-541, 109 S.Ct. at 2612-2613;
 
 Carey v. Brown,
 
 447 U.S. 455, 465, 100 S.Ct. 2286, 2292-2293, 65 L.Ed.2d 263 (1980). As the Court expressed in
 
 White:
 
 “[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.” 536 U.S. at 780,122 S.Ct. 2528 (quoting
 
 The Florida Star,
 
 491 U.S. at 541-542, 109 S.Ct. at 2613 (Scalia, J., concurring));
 
 See generally White,
 
 416 F.3d at 750-751, 757-763 (discussing the underinclusive doctrine, citing several Supreme Court cases).
 
 [67]
 

 C. The Narrowly Tailored Inquiry
 

 If the government sets forth an interest which qualifies as a compelling
 
 *253
 
 interest under strict scrutiny, we must then analyze whether the law in question is precisely drawn or narrowly tailored to serve that compelling interest. As these terms imply, this is an examination of the tightness of fit between the regulation 14Sand the state interest. The purpose of the analysis “is to ensure that speech is restricted no further than necessary to achieve the [state’s] goal ...”
 
 Ashcroft,
 
 542 U.S. at 666,124 S.Ct. at 2791. Toward this end, the Supreme Court has indicated that courts conducting this inquiry should consider several closely related factors. A narrowly tailored rule must actually advance the interest asserted.
 
 Eu,
 
 489 U.S. at 228, 109 S.Ct. at 1022-8 (finding that the state had failed to present any evidence that proved that a ban on party primary endorsements actually served the state’s interest in preventing fraud and corruption in the political process). Second, a rule is not narrowly tailored unless it is reasonably necessary to serve the state interest.
 
 White,
 
 536 U.S. at 775, 122 S.Ct. at 2534-5 (“In order for respondents to show that the announce clause is narrowly tailored, they must demonstrate that it does not ‘unnecessarily circumscrib[e] protected expression.’ ”) (citation omitted);
 
 R.A.V.,
 
 505 U.S. at 395-396, 112 S.Ct. at 2550 (“The dispositive question in this case, therefore, is whether content discrimination is reasonably necessary to achieve St. Paul’s compelling interests ...”);
 
 Burson,
 
 504 U.S. at 199, 112 S.Ct. at 1852 (“... however, a State must do more than assert a compelling state interest-it. must demonstrate that its law is necessary to serve the asserted interest”).
 
 [68]
 
 Third, as previously discussed, if the rule is underinclusive, that is, if it leaves appreciable damage to the supposedly vital state interest unprohibited, this weighs against a | ^finding that the rule is narrowly tailored to serve a compelling interest.
 
 White,
 
 536 U.S. at 779-780, 122 S.Ct. at 2537;
 
 See also White,
 
 416 F.3d at 750-751, 757-763 (citing several Supreme Court cases). Fourth, a narrowly tailored regulation cannot be overinclusive; the regulation cannot suppress more speech than is necessary to accomplish the compelling goal.
 
 Simon & Schuster,
 
 502 U.S. at 121, 112 S.Ct. at 511 (finding New York’s “Son of Sam” law was “significantly overinclusive”). Finally, we note that a rule is not narrowly tailored if there are less-speech restrictive alternatives available that would serve the compelling state interest at least as well.
 
 Ashcroft,
 
 542 U.S. at 665-666, 124 S.Ct. at 2791 (“... the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives.”);
 
 Playboy Entertainment Group,
 
 529 U.S. at 815, 120 S.Ct. at 1887 (“... if a less restrictive means is available for the Government to achieve its goals, the Government must use it.”);
 
 Sable Communications of California, Inc. v. F.C.C.,
 
 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989) (“The Government may, however, regulate the content of constitu
 
 *254
 
 tionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.”);
 
 R.A.V.,
 
 505 U.S. at 395, 112 S.Ct. at 2550 (“The existence of adequate content-neutral alternatives thus ‘undercuts] significantly’ any defense of a [facially content-based] statute ... ”) (citation omitted).
 
 See generally White,
 
 416 F.3d at 751 (citing several Supreme Court holdings and noting the various elements of the narrowly tailored analysis).
 
 [69]
 

 |finY. The Strict Scrutiny Analysis
 

 Having explained the pertinent standards, we will now subject the confidentiality rule to strict scrutiny.
 

 In the ODC’s supplemental brief, the agency argues that the testimony offered by its four witnesses at the hearing before the commissioner illustrated at least four interests served by La. S.Ct. Rule XIX, § 16(A) and (I):(l) protecting the reputations of lawyers who have not committed an ethical violation; (2) encouraging reporting and cooperation with disciplinary investigations; (3) protecting client confidences from unnecessary public disclosure; and (4) helping to prevent abuses of the disciplinary process.
 

 We will review each of these asserted interests in turn. As to each of the interests described above, we will first summarize the concerns the ODC has raised under each phrase, and then we will proceed to determine whether the interest qualifies as a compelling interest under strict scrutiny. Assuming the interest is properly classified as compelling, we will then proceed to determine whether the rule is narrowly tailored to serve the compelling interest.
 

 A. Reputational Interest
 

 We first review the state’s asserted interest in “protecting the reputations of lawyers who have not committed an ethical violation.” Much of the testimony presented at the hearing regarding this interest tended to support the general proposition that an attorney’s reputation is valuable and merits special protection. For instance, Mr. Stanley testified that a “lawyer’s reputation is their stock and trade. And when once lost, it’s almost impossible to regain.” While we agree that an attorney’s reputation is valuable, we must reiterate that the confidentiality rule leaves an attorney’s reputation open to a substantial amount of injury. The |S1 confidentiality mandated by La. S.Ct. Rule XIX, § 16(A) and (I) prohibits participants from speaking only about the disciplinary proceedings. The confidentiality rule does not prohibit, for instance, complainants from describing in detail the events inspiring them request for disciplinary action to anyone they wish. Likewise, other participants can share information they have obtained independent of the proceedings with the general public. Furthermore, the record shows that disciplinary complaints are sometimes accompanied by civil or criminal suits which are rooted in the same underlying fact pattern. Participants may speak freely about these related suits. Thus, the interest at issue is not the protection of an attorney’s reputation generally; rather, the interest is in protecting a lawyer’s reputation from the injury which might arise from the release of information specifically relating to the attorney disciplinary process. In regard to this narrower interest, Mr. Shea testified that while information regarding the substance of the
 
 *255
 
 complaint may already be publicly known, the filing of a complaint “means something different to the general public.” According to Mr. Shea, the filing of the complaint insinuates there is some basis to the complaint. He stated, “You have good lawyers who get these complaints against them, and if every one of these things got out and became public, that would affect their standing.” Chief Disciplinary Counsel Plattsmier testified that, especially in small towns, publication of complaints against attorneys “would have had a substantial detrimental affect upon not only their practice, whether guilty or innocent, but it would have ruined their reputation for them.”
 

 As we previously noted, in making the legal determination as to whether a particular interest qualifies as compelling under strict scrutiny, a court has little guidance unless the Supreme Court has provided some direction regarding the state interest at issue. We find that the Supreme Court has provided guidance as to | ¡¡.¿reputational interests in the context of government investigations in two cases,
 
 Landmark,
 
 435 U.S. 829, 98 S.Ct. 1535, and
 
 Butterworth v. Smith,
 
 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990).
 

 In
 
 Landmark,
 
 the Court reviewed a Virginia statute which made it a crime to divulge information regarding proceedings before the state commission authorized to hear complaints related to judicial disability or misconduct. 435 U.S. at 830-831, 98 S.Ct. 1535. The statute required that the commission’s proceedings remain confidential unless or until charges were filed with the state supreme court.
 
 Id.,
 
 435 U.S. at 830 n. 1, 98 S.Ct. 1535. Virginia, like the ODC in the present case, attempted to justify this suppression of speech on the basis of reputational interests. The state asserted the confidentiality rule protected judges from the reputational injury that would result from the publication of unfounded allegations of misconduct.
 
 Id.,
 
 435 U.S. at 840, 98 S.Ct. 1535. Considering this interest, the Supreme Court held:
 

 Admittedly, the Commonwealth has an interest in protecting the good repute of its judges, like that of all other public officials. Our prior cases have firmly established, however, that injury to official reputation is an insufficient reason for repressing speech that would otherwise be free.
 

 Id.,
 
 435 U.S. at 841-842, 98 S.Ct. at 1543 (internal quotations omitted and citations omitted). While attorneys are not recognized as public officials in the same sense as judges are, we have long held that attorneys are “officers of the courts.”
 
 Chittenden v. State Farm Mut. Auto. Ins. Co.,
 
 00-6414 (La.5/15/01), 788 So.2d 1140, 1148;
 
 State v. Woodville,
 
 161 La. 125, 108 So. 309, 311 (1926);
 
 Accord Petition of Brooks,
 
 678 A.2d at 144. Accordingly, we agree with the New Hampshire Supreme Court that, “the fundamental importance of the first amendment, combined with the role of attorneys as officers of the court, compels the application of similar principles of free expression to the reputational interests of attorneys ...”
 
 Petition of Brooks,
 
 678 A.2d at 144-145;
 
 See also Doe v. Sup.Ct,
 
 |¾734 F.Supp. at 986 (reasoning that if the interest in maintaining the reputation of the judiciary is insufficient to justify the suppression of speech, then the interest in maintaining the reputation of lawyers or the bar is equally insufficient).
 

 In
 
 Butterworth,
 
 the Court reiterated that reputational interests are insufficient to justify the suppression of speech. 494 U.S. 624, 110 S.Ct. 1376. In that case, the Court considered the constitutionality of a Florida statute which generally prohibited grand jury witnesses from ever divulging the substance of their testimony.
 
 Id,.,
 
 494 U.S. at 626-627, 110 S.Ct. 1376. In their
 
 *256
 
 analysis, the Court reviewed Florida’s interest in ensuring that persons that were “accused but exonerated by the grand jury will not be held up to public ridicule.”
 
 Id..,
 
 494 U.S. at 634, 110 S.Ct. 1376 (quotations and citation omitted). We note that, unlike the interest in
 
 Landmark,
 
 435 U.S. at 840-842, 98 S.Ct. 1535, this reputational interest was not limited to that of public officials; it included the reputational interest of private citizens as well.
 
 Butterworth,
 
 494 U.S. at 634, 110 S.Ct. 1376;
 
 See also Doe v. Doe,
 
 127 S.W.3d at 734 (making the same observation). The Court recognized that this interest was a “substantial” state interest.
 
 ButterwoHh,
 
 494 U.S. at 634, 110 S.Ct. 1376. Yet, despite the broader scope of the reputational interest at issue in
 
 ButterwoHh,
 
 the Supreme Court held that the principle established in
 
 Landmark,
 
 435 U.S. at 841-842, 98 S.Ct. 1535, applied with equal force, stating “our decisions establish that absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech.”
 
 ButterwoHh,
 
 494 U.S. at 634, 110 S.Ct. at 1382 (citing several cases including
 
 Landmark,
 
 435 U.S. at 841-842, 98 S.Ct. at 1542-1543).
 

 We note that all four courts that have completed an in-depth First Amendment analysis of confidentiality rules in the context of an attorney discipline system have found that the state’s interest in protecting the reputation of attorneys did not qualify as a compelling interest sufficient to justify the suppression of | ¡^speech. Three of the four courts based their decision on
 
 Landmark,
 
 435 U.S. at 841-842, 98 S.Ct. 1535.
 
 Petition of Brooks,
 
 678 A.2d at 144-145;
 
 R.M. v. Sup.Ct.,
 
 883 A.2d at 377-378;
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. at 986. The Tennessee Supreme Court based its decision on
 
 Landmark,
 
 435 U.S. at 841-842, 98 S.Ct. 1535, and
 
 ButterwoHh,
 
 494 U.S. at 634, 110 S.Ct. 1376.
 
 Doe v. Doe,
 
 127 S.W.3d at 734 (“Applying the principles of these cases, we conclude that to the extent a legitimate interest in reputation is at stake in requiring confidentiality ... such interest should not be recognized as compelling.”).
 

 We agree with the conclusions of our fellow courts. While protecting the reputations of ethical attorneys is clearly an important interest, as we interpret the jurisprudence of the Supreme Court, this interest does not qualify as compelling. Thus, this state interest fails to satisfy the requirements of the strict scrutiny analysis.
 

 B. Encouraging Reporting and Cooperation With Disciplinary Investigations
 

 The second potential compelling interest asserted by the ODC is the state’s interest in “encouraging reporting and cooperation with disciplinary investigations.” This single phrase obviously addresses two separate interests: (1) encouraging participants to cooperate with disciplinary investigations, and (2) encouraging the filing of complaints. Regarding the interest in encouraging cooperation with investigations, the testimony offered at the hearing before the commissioner focused on the effect the confidentiality rule has on witness cooperation. The testimony suggested that while some witnesses are anxious to disclose information regarding complaints, the confidentiality rule creates an environment where more hesitant witnesses are comfortable cooperating with the ODC staff. Regarding the state’s interest in encouraging the filing of complaints, Mr. Plattsmier testified that “there are a number of folks who bring matters to our attention who would not be inclined to do so if confidentiality were not going to be [sr,enforced. They would just [as soon] not participate ...” He then
 
 *257
 
 offered, “[i]t may be very unpopular to bring up a concern against a powerful lawyer, or someone who’s perceived to be a powerful lawyer, and [grievants are] reluctant to do that.”
 

 In essence, the ODC claims that some witnesses are hesitant to testify and some grievants are hesitant to file a complaint for fear of either acts of reprisal from the respondent attorney or unwanted public attention. Thus, the only way to ensure the participation of these witnesses and grievants is to assure them that they can participate anonymously. The ODC asserts the confidentiality rule provides hesitant witnesses and grievants with the anonymity required to assuage their fears and ensure their participation.
 

 We note that each of the four courts that have completed an in-depth First Amendment analysis of confidentiality rules in the context of an attorney discipline system have considered interests equivalent to those represented above. Two of the four courts explicitly held these interests did not qualify as compelling under strict scrutiny.
 
 R.M. v. Sup.Ct.,
 
 883 A.2d at 378-379 (finding the state’s interests in encouraging the cooperation of witnesses and promoting the filing of grievances were not sufficiently compelling to justify the suppression of a participant’s speech);
 
 Doe v. Doe,
 
 127 S.W.3d at 735 (same). The other two courts also held that the confidentiality rules in question could not survive strict scrutiny on the basis of these interests but on different grounds.
 
 Petition of Brooks,
 
 678 A.2d at 145 (assumed
 
 arguendo
 
 that these interests were compelling but found the rule was not narrowly tailored);
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. at 985 (found the state had failed to present any evidence to substantiate these interests and, regardless, found the rule was not narrowly tailored). '
 

 Assuming
 
 arguendo
 
 that the interests here asserted are sufficiently compelling to suppress speech, we find that the confidentiality rule created by La. |BfiS.Ct. Rule XIX, § 16(A) and (I) still fails to survive strict scrutiny because it is not narrowly tailored to promote these interests.
 

 (1) Encouraging Participants to Cooperate With Disciplinary Investigations
 

 The confidentiality rule is not narrowly tailored to secure the cooperation of witnesses in a disciplinary investigation. The rule simply suppresses more speech than is necessary to accomplish this goal. In particular, we fail to see how imposing mandatory confidentiality on the witnesses themselves will encourage the witnesses to cooperate. Indeed some witnesses might be deterred from cooperating with the ODC when confronted with a binding obligation to maintain confidentiality. If a witness desires anonymity, they may choose to remain silent on their own accord.
 
 Cf. Butterworth,
 
 494 U.S. at 633, 110 S.Ct. at 1382 (finding the concern that some witnesses will be deterred from cooperating with a grand jury investigation due to fears of retribution is not addressed by prohibiting the witnesses from discussing their own testimony since “any witness is
 
 free not
 
 to divulge his [or her] own testimony”)(emphasis added).
 

 Furthermore, although we recognize that voluntary cooperation by witnesses is desirable, there are less speech-restrictive means to obtain the cooperation of witnesses.
 
 Accord R.M. v. Sup.Ct.,
 
 883 A.2d at 380. Our rules authorize the ODC to compel by subpoena the attendance and testimony of a reluctant witness. La. S.Ct. Rule XIX, § 14;
 
 Cf. Butterworth,
 
 494 U.S. at 634, 110 S.Ct. at 1382 (“[S]ubpoena and contempt powers [are] available to bring recalcitrant witnesses to the stand.”). Moreover, under Rule 8.1 of the Rules of
 
 *258
 
 Professional Conduct, lawyer participants, in whatever role, ranging from respondents to witnesses, are obligated to fully cooperate with the ODC in its investigation of any matter under threat of discipline. Thus, there are tools that are currently available to the ODC |57which allow the disciplinary agency to obtain the cooperation of witnesses in a manner that is less restrictive of speech.
 

 (2) Encouraging the Filing of Complaints
 

 Having addressed the cooperation of participants, we now turn to the other interest asserted in this section, the interest in encouraging the filing of complaints. As with the prior interest, the confidentiality rule suppresses more speech than is necessary to achieve this end. Specifically, we note that the imposition of mandatory confidentiality upon the complainant is not necessary to serve this interest. As we explained above in regards to witnesses, if a grievant desires anonymity, they are free not to disclose the fact that they have filed a complaint. As with witnesses, the imposition of mandatory confidentiality upon complainants likely serves to deter rather than encourage the filing of some complaints.
 
 See R.M. v. Sup.Ct,
 
 883 A.2d at 380 (“[N]ot all grievants desire anonymity, and indeed, some grievants may be deterred from filing ethics complaints because they are forbidden from publicizing that fact.”);
 
 Doe v. Sup.Ct,
 
 734 F.Supp. at 985. (noting that it is likely that potential complainants would be dissuaded from initiating disciplinary proceedings when doing so would potentially subject them to a “perpetual bar from speaking out” about the complaint). By suppressing the speech of those complainants who would reject anonymity, the rule is obviously not narrowly tailored to encourage a grievant to file a complaint.
 

 We also note that the confidentiality rule is simply not designed or tailored to address the concern raised by Mr. Plattsmier, that some grievants will not file a complaint unless their identity can be hidden from the respondent attorney.
 
 [70]
 
 We Ifisfírst note that La. S.Ct. Rule XIX, § 16(A)(1) indicates that the respondent attorney may waive the confidentiality of the proceeding.
 
 [71]
 
 Second, in the interest of due process, our current disciplinary rules require that before the ODC recommends a disposition other than dismissal or stay, the respondent attorney must be notified in writing of the substance of the complaint and be afforded an opportunity to be heard. La. S.Ct. Rule XIX, § 11(B)(2). In many cases, the substance of the complaint will reveal the identity of the complainant. Furthermore, in keeping with the spirit of Rule XIX, § 11(B)(2), and to serve the practical needs of the investigation which they are required to conduct, the ODC has adopted the common practice of simply forwarding each complaint, as submitted, directly to the respondent attorney.
 
 See
 
 Rule XIX,
 
 *259
 
 § 4(B)(1) and (2) (describing the ODC’s duty to screen and investigate all information coming to the attention of the disciplinary agency). The standard complaint forms used by the ODC, when completed, include the name of the grievant, and thus the anonymity of the grievant is lifted when the respondent attorney reviews the complaint. This state of affairs was discussed during the hearing before the commissioner. We note the following interchange:
 

 [Counsel for Mr. Warner]: ... Isn’t it [the ODC’s] practice to take the complaint, with the complainant’s name on it, and just forward it directly to the lawyer?
 

 [Mr. Plattsmier, Chief Disciplinary Counsel]: Yes, sir.
 

 [Counsel for Mr. Warner]: So the lawyer, even a big, powerful lawyer, from the very beginning of the proceedings knows who the complainant is?
 

 |fic)[Mr. Plattsmier, Chief Disciplinary Counsel]: In almost every instance, that’s true ...
 

 [[Image here]]
 

 [Counsel for Mr. Warner]: So the confidentiality rule doesn’t shield the complainant’s identity or information from the respondent?
 

 [Mr. Plattsmier, Chief Disciplinary Counsel]: That’s true.
 

 Louisiana is not unique in this regard. Two courts have gone so far as to say that “‘[t]he lawyer who may be the target of the complaint surely will learn about the grievance and the identity of the complainant, whether the procedures are deemed confidential or not.’ ”
 
 See R.M. v. Sup.Ct.,
 
 883 A.2d at 380 (quoting
 
 Doe v. Sup.Ct.
 
 734 F.Supp. at 985).
 
 [72]
 

 (3) A Less Restrictive Alternative Presented To Serve These Interests
 

 Finally, we note that counsel for Mr. Warner presented a witness at the hearing before the commissioner who testified that there is a less-speech restrictive alternative to our present confidentiality rule which effectively encourages the filing of complaints and the cooperation of witnesses in an attorney discipline system. Mr. Steve Corbally testified that he previously worked as an investigator for the agency equivalent to our ODC in Massachusetts. While in that capacity he became familiar with the Massachusetts confidentiality rule for attorney disciplinary proceedings. According to Mr. Corbally, the Massachusetts rule in place at the time of his employment only imposed confidentiality on employees or |f,nagents of the disciplinary agency.
 
 [73]
 
 In contrast to our
 
 *260
 
 present confidentiality regime, under the Massachusetts rule there was no gag order placed on nonagency participants including complainants, the accused attorneys, or witnesses. After the Massachusetts confidentiality regime had been explained, Counsel for Mr. Warner asked Mr. Corbally, “In Massachusetts ... did you have problems with getting witnesses to cooperate?” Mr. Corbally replied, “No.” Counsel for Mr. Warner then asked Mr. Corbally, “How about in getting people to file complaints?” Mr. Corbally replied, “No problem with that.”
 

 “When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government’s obligation to prove that the alternative will be ineffective to achieve its goals.”
 
 Playboy Entertainment Group,
 
 529 U.S. at 816, 120 S.Ct. at 1888. “A court should not assume a plausible, less restrictive alternative would be ineffective ...”
 
 Id.,
 
 529 U.S. at 824, 120 S.Ct. 1878;
 
 See also Ashcroft,
 
 542 U.S. at 665, 124 S.Ct. at 2791 (“When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute.”) (citation omitted). Counsel for Mr. Warner presented evidence of a plausible alternative to our present confidentiality regime which suppresses less speech and apparently is sufficient to achieve the interests the ODC has asserted under this header. The ODC has failed to present any evidence or argument to show that this less restrictive alternative would be an ineffective method of attaining its goals. Thus, the ODC has failed to meet its burden to prove that the present confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) is narrowly tailored to serve the interests we address under this header.
 

 |mC. Protecting Client Confidences From Unnecessary Public Disclosure
 

 The third interest asserted by the ODC is the state’s interest in “protecting client confidences from unnecessary public disclosure.” At the root of this concern is Rule 1.6(b) of the Rules of Professional Conduct, which states that an attorney may reveal privileged information relating to the representation of a client to the extent the lawyer reasonably believes is necessary in several situations, including to establish a defense to a disciplinary complaint. Several of the witnesses testifying on behalf of the ODC at the hearing before the commissioner acknowledged that the Rules of Professional Conduct clearly allow for the disclosure of privileged information, but suggested that the confidentiality rule serves to minimize any potential damage to the client which might result from this exception to privilege. Again, the confidentiality rule mandates that participants not divulge information regarding the proceedings unless or until formal charges are filed. Since many charges are dismissed or addressed using private discipline, and thus are perpetually considered confidential matters, the ODC argues the confidentiality rule protects much of the confidential information which is disclosed during disciplinary investigations from public exposure.
 

 Assuming
 
 arguendo
 
 that the interest here asserted is sufficiently compelling to suppress speech, we find that the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) still fails to survive strict scrutiny because it is not narrowly tailored to promote this asserted interest. As it regards this interest, the confidentiality rule is overinclusive. The rule not only bars disclosure of client confidences, it bars disclosure of all information pertaining to the disciplinary proceedings.
 
 *261
 
 Furthermore, Mr. Plattsmier stated that upwards of eighty percent of all the complaints filed with the ODC are from non-lawyers. He also stated that most of the individuals comprising this eighty percent, “are clients filing against their own | ^lawyers, so that there’s [sic, there are] no confidences that are being breached,” as communications are exchanged between the complainant, the ODC, and the respondent attorney during the investigation of the complaint. Thus, in the majority of cases, the imposition of confidentiality upon the complainant is excessive and unnecessary as it regards this interest.
 

 D. Helping to Prevent Abuses of the Disciplinary Process
 

 The fourth and final potential compelling interest asserted by the ODC is the state’s interest in “helping to prevent abuses in the disciplinary process.” The example “abuses” given by the witnesses testifying on behalf of the ODC at the hearing before the commissioner were modeled after the fact pattern in the instant matter. The witnesses noted that under Rule 8.1 of the Rules of Professional Conduct, a lawyer is obligated to cooperate with the ODC in its investigation of any matter. As discussed in the section above, in the process of responding to a disciplinary complaint, an attorney is allowed to reveal privileged client information under Rule 1.6(b) of the Rules of Professional Conduct. The record in the present case demonstrates that sometimes, to serve the practical needs of an investigation, the ODC forwards the accused attorney’s response to the complaint, including any confidential information disclosed, to the complainant for further comment and response. In a situation where the complainant is an opposing attorney in ongoing litigation, this situation is ripe for abuse. The attorney disciplinary investigation process may place information that would normally be protected from discovery in parallel civil or criminal litigation, under the attorney-client privilege or work product doctrine, into the hands of the opposition. The ODC argues the confidentiality rule is necessary to prevent the opposing attorney/complainant from then using the otherwise unobtainable information that they receive during the investigation of a disciplinary complaint to their benefit in the pending civil or | ^criminal litigation. If allowed to go unchecked, the ODC asserts that this “second avenue of discovery” could threaten the separation of powers, hindering the legislature’s ability to enact rules of discovery.
 
 [74]
 

 Assuming
 
 arguendo
 
 that the state’s interest in preventing abuse of the disciplinary process is a compelling interest, we find that the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I) still fails to survive strict scrutiny because it is not narrowly tailored to promote this asserted interest. A less-speech restrictive alternative which would adequately serve this interest is readily apparent. This court could simply adopt a rule which specifically prohibits the use of information gained in a disciplinary proceeding in civil or criminal proceedings.
 
 See Ashcroft,
 
 542 U.S. at 666, 124 S.Ct. at 2791 (noting that the least restrictive alternative test does not begin with “the status quo of existing regulations,” but rather the court should ask “whether the challenged regulation is the least restrictive means among avail
 
 *262
 
 able, effective alternatives”);
 
 Consolidated Edison,
 
 447 U.S. at 542 n. 11, 100 S.Ct. at 2336 (noting a readily apparent less-speech restrictive alternative was available that would address the state interest).
 
 [75]
 

 VI. Conclusion
 

 In conclusion, we find that the confidentiality requirement imposed upon participants in attorney disciplinary proceedings under a joint reading of La. S.Ct. | MRule XIX, § 16(A) and (I) violates the First Amendment of the United States Constitution. The confidentiality rule was promulgated by this Court, a state entity, and directly abridges speech, thus the protections of the First Amendment apply to the rule. The confidentiality rule is a content-based regulation, and thus its substantial restriction of speech may only be deemed constitutional if the rule satisfies the requirements of the strict scrutiny analysis. Accordingly, we have reviewed the requirements of strict scrutiny in-depth and have carefully applied these standards to the rule. We conclude that the confidentiality rule does not satisfy the requirements of strict scrutiny. As we interpret the Supreme Court’s holdings, the reputa-tional interests of attorneys, while important, do not qualify as compelling under strict scrutiny. Furthermore, even if we were to assume
 
 arguendo
 
 that the remaining three interests could qualify as compelling, the confidentiality rule is not narrowly tailored to serve these interests. Accordingly, the confidentiality requirement imposed upon participants in attorney disciplinary proceedings under a joint reading of La. S.Ct. Rule XIX, § 16(A) and (I) must fall.
 

 Our decision today is limited. In this opinion, we only address the constitutionality of the confidentiality requirement imposed upon participants in attorney disciplinary proceedings under a joint reading of La. S.Ct. Rule XIX, § 16(A) and (I). We do not address the various other applications of the nonpublic/public classification scheme created by Rule XIX, § 16(A) and § 16(B). Neither do we address the various applications of the nonpublic/public classification scheme created by Rule XIX, § 16(C) for “Proceedings Alleging Disability”
 

 Given our findings, the ODC’s claim that Warner and Rando violated the confidentiality imposed by La. S.Ct. Rule XIX, § 16(A) and (I), thus breaching several Rules of Professional Conduct, no longer has a valid foundation in law.
 

 |6BDECREE
 

 Upon review of the findings and recommendations of the hearing committee, the disciplinary board, and the commissioner, and considering the record, briefs, and oral argument, it is ordered that the formal charges against respondents be and hereby are dismissed.
 

 APPENDIX
 

 | fifiLa. S.Ct. Rule XIX, § 16 provides as follows:
 

 Section 16. Access to disciplinary information
 

 A. Confidentiality. Prior to the filing and service of formal charges in a discipline matter, the proceeding is confidential, except that the pendency, subject matter, and status of an investigation may be disclosed by disciplinary counsel if:
 

 
 *263
 
 (1) the respondent has waived confidentiality;
 

 (2) the proceeding is based upon allegations that include either the conviction of a crime or reciprocal discipline;
 

 (3) the proceeding is based upon allegations that have become generally known to the public; or
 

 (4) there is a need to notify another person or organization in order to protect the public, the administration of justice, or the legal profession.
 

 Following the dismissal of a proceeding by disciplinary counsel, disciplinary counsel’s file regarding the proceeding may be reviewed, pursuant to an audit policy adopted by the board, by members of the board, the disciplinary board administrator, or former board members appointed by the board chair for that purpose, provided however that the information contained therein shall not be disclosed by those reviewing it except as allowed by this section.
 

 Disciplinary Counsel and the Practice Assistance Counsel of the Louisiana State Bar Association may communicate as necessary concerning matters referred to the Practice Assistance and Improvement Program in accordance with Section 32.
 

 B. Public Proceedings. Upon filing and service of formal charges in a discipline matter, or filing of a petition for reinstatement, the proceeding is public, except for:
 

 (1) deliberations of the hearing committee, board, or court; or
 

 (2) information with respect to which the hearing committee has issued a protective order.
 

 C. Proceedings Alleging Disability. Proceedings for transfer to or from disability inactive status are confidential. All orders transferring a lawyer to or from disability inactive status are public.
 

 D. Protective Orders. In order to protect the interests of a complainant, witness, third party, or respondent, the hearing committee to which a matter is assigned may, upon application of any person and for good cause shown, issue a protective order prohibiting the disclosure of specific information otherwise privileged or confidential and direct that the proceedings be conducted so as to implement the order, including requiring that the hearing be conducted in such a way as to preserve the confidentiality of the information that is the subject of the application.
 

 E. Request for Nonpublic Information.
 

 A request for nonpublic information other than that authorized for disclosure under paragraph A above shall be denied unless the request is from one of the following agencies:
 

 (1) the Louisiana State Bar Association; or
 

 |fi7(2) lawyer disciplinary enforcement agencies.
 

 F. Notice to Lawyer. Except as provided in paragraph G, if the board or counsel decides to provide nonpublic information requested, and if the lawyer has not signed a waiver permitting the requesting agency to obtain nonpublic information, the lawyer shall be notified in writing at his or her last known address of that information which has been requested and by whom, together with a copy of the information proposed to be released to the requesting agency. The notice shall advise the lawyer that the information shall be released at the end of twenty-one days following mailing of the notice unless the lawyer objects to the disclosure. If the lawyer timely objects to the disclosure, the information shall remain confidential unless the requesting agency obtains a court order requiring its release.
 

 
 *264
 
 G. Release Without Notice. If an otherwise authorized requesting agency has not obtained a waiver from the lawyer to obtain nonpublic information, and requests that the information be released without giving notice to the lawyer, the requesting agency shall certify that:
 

 (1) the request is made in furtherance of an ongoing investigation into misconduct by the lawyer;
 

 (2) the information is essential to that investigation; and
 

 (3) disclosure of the existence of the investigation to the lawyer would seriously prejudice that investigation.
 

 H. Notice to National Discipline Data Bank. The disciplinary agency shall transmit notice of all public discipline imposed against a lawyer, transfers to or from disability inactive status, and rein-statements to the National Discipline Data Bank maintained by the American Bar Association.
 

 I. Duty of Participants. All participants in a proceeding under these rules shall conduct themselves so as to maintain the confidentiality mandated by this rule.
 

 J. Confidentiality of Communications to the Louisiana State Bar Association Committee on Alcohol and Drug Abuse. No member of the Committee on Alcohol and Drug Abuse of the Louisiana State Bar Association shall be required or permitted to disclose any communication made to that member or any information received by that member while acting in the course of committee business concerning the conduct, behavior, or condition of a lawyer without the express consent of that lawyer.
 

 *
 

 Calogero, C.J., retired, recused. Chief Justice Calogero recused himself after oral argument, and he has not participated in the deliberation of this case.
 

 [1]
 

 . The Office of Disciplinary Counsel ("ODC”) has suggested that this Court refer to the three lawyers against whom Warner filed a complaint as Attorney B, Attorney C, and Attorney S. This Court will honor the ODC's request in this opinion.
 

 [2]
 

 . Presumably Mr. Warner was referring to a lawyer's duty to protect the property of a third party which is in the lawyer’s possession.
 
 See
 
 Rule 1.15 of the Rules of Professional Conduct.
 

 [3]
 

 . The civil suit record was sealed after the filing of formal charges in the instant matter and at the urging of counsel for Rando in these proceedings. However, by the time the record was sealed in November of 2003, the complaints against Attorney B, Attorney C, and Attorney S had been in the public domain for eighteen months.
 

 [4]
 

 . In their findings, the Disciplinary Board expressed the view that the different subsections of La. S.Ct. Rule XIX, § 16 imposed different obligations, and therefore, rather than charging both respondents with violating La. S.Ct. Rule XIX, § 16 A, G, and I corporately, as the ODC suggested, the Board reviewed each respondent’s actions in light of the obligations imposed by each section. According to the Board, Rule XIX, § 16(A) creates a professional obligation, binding upon all attorneys, to maintain the confidentiality of bar complaints unless or until formal charges are filed. Rule XIX, § 16(1) requires all “participants” in the proceeding to abide by the confidentiality mandated in § 16(A). Thus, under this interpretation, the Board found that Warner, as both a participant and an attorney, had violated his obligations under Rule XIX, § 16(A) and (I), while Rando, whom the Board judged not to be a “participant,” had only violated the obligations imposed under Rule XIX, § 16(A). The Board explained that Rule XIX, § 16(G), which addresses the release of information to a "requesting agency” about an attorney without notice to that attorney, was inapplicable to the matter at hand.
 

 [5]
 

 .The dissent adopted the reasoning of the Tennessee Supreme Court as expressed in the case of
 
 Doe v. Doe,
 
 127 S.W.3d 728 (Tenn. 2004). In
 
 Doe v. Doe,
 
 the court held that Tenn. Sup.Ct. R. 9, § 25, which the dissent argued was essentially similar to La. S.Ct. Rule XIX, § 16(A), violated the tenants of the First Amendment of the United States Constitution. 127 S.W.3d at 736-737.
 

 [6]
 

 . In the present matter, the ODC represents the interests of this Court, which is the state entity whose action is under review. Accordingly, the interests asserted by the ODC are occasionally referred to as state interests. As a courtesy, notice was sent to the Louisiana Attorney General regarding the constitutional claim addressed herein, however, no brief was received from that office regarding this matter.
 

 [7]
 

 . At the time of the hearing, Mr. Stanley was also serving as the Chair of the LSBA Rule’s Committee. This committee was formerly known as the Lawyer’s Conduct Committee.
 

 [8]
 

 . Judge Ciaccio submitted a four page report briefly summarizing the testimony of each of the witnesses that testified at the hearing. He also tendered several factual findings. This Court did not request, and Judge Ciaccio did not submit, a legal opinion regarding the constitutional issues in this case.
 

 [9]
 

 . La. S.Ct. Rule XIX, § 16 contains several subsections. The formal charges filed by the ODC and the findings of the Hearing Committee and the Disciplinary Board specifically address Rule XIX, § 16(A), (G), and (I). We agree with the Disciplinary Board’s finding that Rule XIX, § 16(G), which addresses the release of information to a "requesting agency” about an attorney without notice to that attorney, is inapplicable in the matter at hand. Thus, we direct our analysis only to Rule XIX, § 16(A) and (I). As explained in this opinion, though we address two separate provisions, these separate provisions create one confidentiality regime. Accordingly, these provisions are alternatively referred to herein as "the confidentiality rule.”
 

 [10]
 

 .In addition to these four courts, we also note that the Montana Supreme Court has considered a claim that the confidentiality requirements of that state's attorney discipline system violate an individual's right to free speech.
 
 Goldstein v. The Commission on Practice,
 
 297 Mont. 493, 995 P.2d 923, 929-930 (2000). In
 
 Goldstein,
 
 the petitioners averred that the confidentiality rule violated their rights to free speech under the Montana Constitution.
 
 Id.,
 
 at 930. In support of their argument, the petitioners cited
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. 981 (S.D.Fla. 1990), in which the federal district court held that Florida's confidentiality rule for attorney disciplinary cases, as applied to a complainant, violated the First Amendment of the United States Constitution. Unlike the four courts cited above, the Montana Supreme Court did not tender an in-depth analysis of the free speech issue. In
 
 Goldstein,
 
 the court simply distinguished the case before it from the decision in
 
 Doe v. Sup.Ct.,
 
 734 F.Supp. 981 (S.D.Fla. 1990), and thereafter dismissed the petitioners' arguments that the confidentiality rule violated the
 
 *228
 
 petitioners' rights to free speech.
 
 Goldstein,
 
 995 P.2d at 929-930.
 

 [11]
 

 . LSA-Const. art. 2, § 1 establishes that the powers of the government of the state of Louisiana are divided into three branches: legislative, executive, and judicial. LSA-Const. art. 5 § 1 states that the judicial power of the state is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this article.
 

 [12]
 

 . La. S.Ct. Rule XIX, § 16 is reproduced in its entirety in the appendix to this opinion. The pertinent portions of La. S.Ct. Rule XIX, § 16(A) and (I), reproduced above, have remained unchanged since the Court adopted these provisions in 1990. This was the opera
 
 *229
 
 tive text at the time of the alleged misconduct in the instant case.
 

 [13]
 

 .
 
 See also
 
 The ABA Standing Comm, on Professional Discipline,
 
 Report On The Louisiana Lawyer Regulation System
 
 5 (August 1996) (copy on file with the Office of the Judicial Administrator, Louisiana Supreme Court).
 

 [14]
 

 . The paragraphs currently included after Rule XIX, § 16(A)(4) are not taken from the 1989 ABA MRLDE. 114 No. 2
 
 Annu. Rep. ABA
 
 334 (1989). We also note that this Court removed some language from Model Rule 16(A)(4) of the 1989 ABA MRLDE before we adopted this provision as our own. As originally adopted by the ABA, the 1989 version of Model Rule 16(A)(4) stated:
 

 (4) there is a need to notify another person or organization,
 
 including the clients’ security fund,
 
 in order to protect the public, the administration of justice, or the legal profession. (emphasis added). 114 No. 2
 
 Annu. Rep. ABA
 
 334 (1989). The italicized text in the above quoted provision was removed before we incorporated this provision into our rules. Beyond these minor alterations, the text in La. S.Ct. Rule XIX, § 16(A) and (I) was taken directly from Model Rule 16 of the 1989 ABA MRLDE.
 

 [15]
 

 . The ABA, Ctr. for Professional Responsibility,
 
 Model Rules for Lawyer Disciplinary Enforcement
 
 xi (2007) (providing a chronological list of various ABA committees and publications which have addressed the standards of lawyer regulation); The ABA Special Comm, on the Evaluation of Disciplinary Enforcement,
 
 Problems and Recommendations in Disciplinary Enforcement
 
 v (1970) (preliminary draft) (stating that the special committee on the evaluation of disciplinary enforcement was created in 1967).
 

 [16]
 

 . The ABA, Ctr. for Professional Responsibility,
 
 Model Rules for Lawyer Disciplinary Enforcement
 
 xi (2007).
 

 [17]
 

 . After the 1993 amendments to Model Rule 16 of the 1989 ABA MRLDE, Model Rule 16(A) was redesignated 16(B), and Model Rule 16(1) was redesignated 16(J). 118 No. 2
 
 Annu. Rep. ABA
 
 180-182, 226-227 (1993). The new Model Rule 16(B) was revised to state that, “Prior to the filing and service of formal charges in a discipline matter, the proceeding is confidential
 
 within the agency
 
 ...” (emphasis added)
 
 Id.,
 
 at 226. The new
 

 Model Rule 16(J) as amended states:
 

 J. Duty of Officials and Employees of the Agency
 

 All
 
 officials and employees of the agency
 
 in a proceeding under these rules shall conduct themselves so as to maintain the confidentiality mandated by this rule.
 
 Id.,
 
 at 227 (emphasis added).
 

 [18]
 

 . 118 No. 2
 
 Annu. Rep. ABA
 
 180-181 (1993) (explaining that the 1993 amendments discussed herein were drafted after the ABA House of Delegates carefully considered the McKay Commission report).
 

 [19]
 

 . The ABA Commission on Evaluation of Disciplinary Enforcement, known as the McKay Commission in honor of its first chair, Robert B. McKay, was created in 1989. 118 No. 2
 
 Annu. Rep. ABA
 
 180 (1993). The Commission was asked to conduct a nationwide evaluation of lawyer disciplinary enforcement and to provide "a model for responsible regulation of the legal profession into the next century.”
 
 Id.
 
 After completing their evaluation, the Commission members tendered twenty-two recommendations to the ABA House of Delegates regarding disciplinary standards in December 1991.
 
 Id.;
 
 The ABA, Ctr. For Professional Responsibility,
 
 Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement
 
 xi-xii (1992) (stating the final report was circulated to the ABA Delegates in December 1991); 117 No. 1
 
 Annu. Rep. ABA
 
 513-644 (1992) (contains the full McKay Commission Report).
 

 [20]
 

 .The footnotes to the 1993 confidentiality rule amendments cite to Recommendation 7 of the McKay Commission report. 118 No. 2
 
 Annu. Rep. ABA
 
 180-182, 226-227 (1993) (introducing and then reproducing the 1993 amendments to the confidentiality rule). As originally submitted by the McKay Commission, Recommendation 7 proposed that attorney disciplinary process should be made fully public from the time of a complainant’s initial communication with the disciplinary agency. 117 No. 1
 
 Annu. Rep. ABA
 
 551-553 (1992). In the comments to Recommendation 7, the Commission sought to justify its suggestion on several grounds. It was in the midst of this discussion that the Commission detailed the case law regarding the unconstitutional application of confidentiality rules in disciplinary proceedings.
 
 Id.;
 
 The ABA, Ctr. For Professional Responsibility,
 
 Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement
 
 33-39 (1992).
 

 When the McKay Commission’s report was formally considered by the ABA House of Delegates on February 4, 1992, 118 No. 2
 
 Annu. Rep. ABA
 
 180 (1993), Recommendation 7 was amended to require that the proceedings and records of a disciplinary matter be open to the public only after a finding of probable cause. The ABA, Ctr. For Professional Responsibility,
 
 Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement
 
 33-39 (1992). While the ABA Delegates clearly rejected the McKay Commission's suggestion to make attorney disciplinary proceedings fully public, the 1993 amendments we discuss herein suggest that the Delegates were influenced by the McKay Commission's comments
 
 *231
 
 regarding the constitutionality of confidentiality provisions as applied in disciplinary proceedings.
 

 [21]
 

 . As noted above, in its discussion of confidentiality rules, the McKay Commission primarily focused on the holding in
 
 Doe v. Sup. Ct.,
 
 734 F.Supp. 981 (finding that the confidentiality rule governing Florida's attorney disciplinary proceedings, as applied to complainants, violated the First Amendment). The Commission then cited and explained, via parenthetical, the holdings in several other cases including:
 
 Landmark Communications, Inc. v. Virginia,
 
 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (finding that a Virginia statute which threatened individuals with criminal sanctions for divulging information regarding judicial misconduct proceedings violated the tenants of the First Amendment as applied to a third party to the proceedings), and
 
 Baugh v. Judicial Inquiry and Review Comm’n,
 
 907 F.2d 440 (4th Cir.1990) (finding the confidentiality provision governing proceedings before the judicial discipline commission was not a valid time, place, and manner restriction but rather a content based restriction subject to strict scrutiny). 117 No. 1
 
 Annu. Rep. ABA
 
 552 (1992); The ABA, Ctr. For Professional Responsibility,
 
 Lawyer Regulation for a New Century: Report of the Commission on Evaluation of Disciplinary Enforcement
 
 37 (1992).
 

 [22]
 

 . As we previously noted, the Disciplinary Board adopted the view that La. S.Ct. Rule XIX, § 16(A) creates a professional obligation, binding upon all attorneys, whereas La. S.Ct. Rule XIX, § 16(1) requires all ''participants” in the disciplinary proceeding to abide by the confidentiality mandated in § 16(A). The ODC has taken the position that Rule XIX, § 16(A) and (I) should be read together, not separately. According to the ODC, section (A) establishes the confidentiality of an investigation in general, as well as a few enumerated exceptions. Section (I) binds all lawyer participants to conduct themselves so as to maintain the principle established by section (A).
 

 [23]
 

 . Compare the general phrasing of § 16(A) with § 16(D), § 16(E), § 16(F), § 16(G), § 16(H), § 16(1), and § 16(J), which address themselves specifically to the disciplinary agency as a whole, a specific component of the disciplinary agency, the LSBA or one of is committees, other authorized agencies, and/or a class or several classes of individuals.
 

 [24]
 

 . Our finding on this point is supported by our previous discussion on the origins of the two provisions here at issue. We note that when the ABA moved to amend the confidentiality provisions they amended the source rules for La. S.Ct. Rule XIX, § 16(A) and (I) simultaneously and in a similar fashion, clearly indicating that the two provisions act jointly to impose confidentiality. 118 No. 2
 
 Anna. Rep. ABA
 
 180-182, 226-227 (1993).
 

 [25]
 

 .In this opinion, we only address the constitutionality of the confidentiality requirement imposed upon participants in attorney disciplinary proceedings under a joint reading of La. S.Ct. Rule XIX, § 16(A) and (I). We do not address the various other applications of the nonpublic/public classification scheme created by § 16(A) and § 16(B). Neither do we address the various applications of the nonpublic/public classification scheme created by § 16(C) for "Proceedings Alleging Disability.”
 

 [26]
 

 . In our current attorney disciplinary system the complainant initiates the ODC’s investigation of alleged attorney misconduct. Rule XIX § 11(A). The complainant also must be notified of the disposition of a matter following the investigation and has the right to appeal a decision by the ODC to dismiss a complaint. Rule XIX, § 11(B)(3). Furthermore, the record of the instant matter seems to indicate that the complainant, at least in some cases, is intimately involved with the investigation of a complaint. For instance, in this case the ODC sent a copy of the complaints directly to the respondent attorneys for comment and response. Then the ODC sent the complainant copies of the respondents' replies to the complaints, presumably, in part, to elicit a potential rebuttal and to further the investigation.
 

 [27]
 

 .
 
 Cf. Briscoe v. LaHue,
 
 460 U.S. 325, 334-335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (citation omitted) (observing that counsel and witnesses are “participants” in the judicial process).
 

 [28]
 

 . While its various components perform different functions, the Attorney Disciplinary Board is a single agency. La. S.Ct. Rule XIX, § 2(A). Thus, when one agency component is participating in a particular disciplinary proceeding, the entire disciplinary agency is a participant in that disciplinary matter.
 

 [29]
 

 . We cannot endorse the ODC’s argument that an attorney like Mr. Rando, who represents a complainant or respondent in a related civil suit but has played no role whatsoever in the attorney disciplinary proceeding, qualifies as a participant in the attorney disciplinary proceeding under Rule XIX, § 16(1). This is not in keeping with a plain reading of the provision. However, even though we find that Mr. Rando was not a participant under Rule XIX, § 16(1), he is not wholly vindicated in the present matter. We note that Mr. Rando has also been charged with violating Rule 8.4(a) of the Rules of Professional Conduct, which forbids an attorney from assisting or inducing another attorney, here Mr. Warner, to engage in misconduct. Accordingly, our resolution of the constitutional issue at hand is still essential to the disposition of the charges bearing upon both attorneys.
 

 [30]
 

 .At the hearing before the commissioner, three of the witnesses called by the ODC testified on this point. Each agreed that the confidentiality rule created by La. S.Ct. Rule XIX, § 16(A) and (I), on its face, applies to both nonlawyers and lawyers. Mr. Shea testified, "I think everybody who participates in the proceeding, that is to be maintained as confidential under Section 16, everybody who participates in my view is subject to [the confidentiality] Rule.” Mr. Shea was then asked whether it was his opinion that non-lawyers who are participating in the process as complainants are bound by the confidentiality rule. Mr. Shea replied in the affirma-
 
 *234
 
 live. Mr. Stanley testified that the confidentiality rule, "applies to all participants in the process, which would include complaining parties who are laymen ...” When asked whether the confidentiality rule applied to all participants, including nonlawyers, Mr. Plattsmier replied, "Yes. Absolutely.” We also note that counsel for the ODC, Mr. Ours, emphasized at one point in the hearing that the ODC had not taken tire position that the confidentiality rule did not apply to nonlaw-yers.
 

 [31]
 

 . During opening statements at the hearing before the commissioner, disciplinary counsel stated:
 

 [The confidentiality rule] affects actually less than half [of one] percent of the population as to its enforceability. The only enforceable aspect of the Rule is against lawyers. There’s no vehicle for enforcing this Rule ... against a nonlawyer ... We can encourage them, as indeed the Tennessee case suggested you do, encourage them to maintain the confidentiality. But we can’t enforce it.
 

 [32]
 

 . The testimony given by Mr. Shea and Mr. Plattsmier at the hearing before the commissioner confirms that the leadership of the ODC has reasonably interpreted the confidentiality rule to require all participants in the disciplinary process, both nonlawyers and lawyers, to abide by the confidentiality rule. The testimony also reveals that the ODC has acted accordingly, establishing a series of procedures designed to remind all participants that the rule requires them to maintain the confidentiality of the proceedings.
 

 [33]
 

 . In
 
 Doe v. Doe,
 
 the Tennessee Supreme Court stated that:
 

 [t]he interest of promoting meritorious complaints and assistance in investigations could be advanced
 
 by permitting and encouraging confidentiality, not requiring it. See Doe v. Supreme Court of Florida,
 
 734 F.Supp. at 985;
 
 Petition of Broolcs,
 
 678 A.2d at 145. (emphasis added)
 

 127 S.W.3d at 735. These comments were made as the court considered whether imposing mandatory confidentiality upon a witness or complainant was necessary to protect the anonymity of those individuals. The court found that it was not. The court agreed with the cited authorities, that if a participant wanted to remain anonymous they could exercise their own free will and choose not to speak about their involvement with the disciplinary process.
 

 The encouragement referenced by the
 
 Doe v. Doe
 
 court, and in the cited decisions, is clearly an invitation to participants in the proceeding to exercise their free will. That is, to determine, based on their own interests, whether or not they wish to maintain silence about their involvement with the disciplinary process in an attempt to avoid unwanted attention. This case law offers no support to the arguments asserted here by the ODC.
 

 As we explain in this opinion, our confidentiality rule, on its face, requires participants to maintain confidentiality. Our rule does not invite participants to decide for themselves whether they wish to maintain confidentiality. Furthermore, the procedures adopted by the ODC to "encourage” participants in our disciplinary system to maintain confidentiality do not encourage participants to exercise their own free will. In accordance with the plain meaning of the confidentiality rule, the ODC informs all participants, both lawyers and nonlawyers, that they are required to maintain confidentiality, whether they desire to maintain silence or not.
 

 [34]
 

 . The ABA, Ctr. for Professional Responsibility,
 
 Model Rules for Lawyer Disciplinary Enforcement
 
 xi (2007) (providing a chronological list of key publications developed by the ABA regarding Lawyer Disciplinary Enforcement).
 

 [35]
 

 .
 
 See
 
 17 C.J.S.,
 
 Contempt
 
 § 69, 130-132 (1999) ("Statutes or constitutional provisions relating to the venue of suits generally are inapplicable to civil or criminal contempt proceedings, since it is the court contemned which must try the contempt.”);
 
 Doe v. Board of Professional Responsibility,
 
 104 S.W.3d 465, 474 (Tenn.2003) ("As a general rule, the power to punish for contempt is reserved to the court against which the contempt is committed, i.e. the court whose order is disobeyed.”) (internal quotations and citations omitted).
 

 [36]
 

 . The ODC does not cite a specific state constitutional provision. However, we presume the ODC is referring to La. Const, art. I, § 19, which, in pertinent part, states:
 

 No person shall be subjected to imprisonment or
 
 forfeiture of
 
 rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based ...
 

 Id.
 
 The term used by the article "is 'review' — a generic term' — and not necessarily an ‘appeal’ as the term of art is used in Article V, § 5.” Lee Hargrave,
 
 The Declaration of Rights of the Louisiana Constitution of 1974,
 
 35 La.L.Rev. 1, 62 (1974-1975). We have never held that this provision bars this Court from punishing an individual for contempt of court.
 
 See State v. Casey,
 
 99-0023 (La.2/11/00), 775 So.2d 1043 (an example of the implementation of this Court’s inherent power to hold an individual in contempt for failing to respond to an order to comply with the Rules of this Court).
 

 [37]
 

 .Our discussion on this matter should not be construed as an expression of preference for contempt proceedings. In recent years, we have rarely exercised our contempt powers.
 

 [38]
 

 . In
 
 Jews for Jesus,
 
 the Court stated:
 

 On its face,
 
 the resolution at issue in this case reaches the universe of expressive activity, and, by prohibiting all protected expression, purports to create a virtual "First Amendment Free Zone” at LAX. The resolution
 
 does not merely regulate expressive activity in the Central Terminal Area that might create problems such as congestion
 
 or the disruption of the activities of those who use LAX.
 
 Instead, the resolution expansively states
 
 that LAX "is not open for First Amendment activities by any individual and/or entity,” and that "any individual and/or entity [who] seeks to engage in First Amendment activities within the Central Terminal Area ... shall be deemed to be acting in contravention of the stated policy of the Board of Airport Commissioners.” (emphasis added).
 

 482 U.S. at 574-575, 107 S.Ct. at 2572. In,
 
 Talley,
 
 the Court noted:
 

 Counsel has urged that this ordinance is aimed at providing a way to identify those responsible for fraud, false advertising and libel.
 
 Yet the ordinance is in no manner so limited,
 
 nor have we been referred to any legislative history indicating such a purpose. Therefore we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils.
 
 This ordinance simply bars all handbills under all circumstances anywhere
 
 that do not have the names and addresses printed on them in the place the ordinance requires, (emphasis added).
 

 362 U.S. at 64, 80 S.Ct. at 538.
 

 [39]
 

 . In our society, it is well known that " ‘[i]t is emphatically the province and duty of the judicial department to say what the law is.’ "
 
 Bourgeois v. A.P. Green Indus., Inc.,
 
 00-1528 (La.4/3/01), 783 So.2d 1251, 1260 (quoting
 
 Marbury v. Madison,
 
 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60, 73 (1803)).
 

 [40]
 

 .See also Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, et al„
 
 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984) (noting that because “the very existence of some broadly written statutes may have ... a deterrent effect on free expression” the Court has developed the overbreadth doctrine) (citation omitted);
 
 Ashcroft v. ACLU,
 
 542 U.S. 656, 666, 124 S.Ct. 2783, 2791, 159 L.Ed.2d 690 (2004) (noting that the purpose of the least restrictive alternative test is to ensure that legitimate speech “is not chilled
 
 or
 
 punished”) (emphasis added);
 
 Laird v. Tatum,
 
 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972) (noting that the Court has found "in a number of cases that constitutional violations may arise from the deterrent, or ‘chilling,’ effect of governmental regulations ... ”) (citations omitted).
 

 [41]
 

 . The testimony at the hearing before the commissioner revealed that over eighty percent of all complaints are received from non-lawyers. Furthermore, the majority of complaints are submitted by current or former clients against their current or former attorney.
 

 [42]
 

 . Mr. Plattsmier stated that neither lawyer or nonlawyer complainants are threatened or coerced by the disciplinary agency, the ODC simply "tell[s] them ... what the Supreme Court Rule is, and [that] they are expected ... to maintain the confidentiality that's mandated by the Rule.” Though it may be unintentional, we recognize that some form of subtle coercion is at work in the current system.
 

 [43]
 

 . It should be noted that the only evidence in the record of potential in-person visits by the ODC staff is Mr. Shea's statement that he can remember agency personnel, “actually running and saying you’re to maintain the confidentiality of this proceeding ..." By contrast, at the hearing before the commissioner there were several questions asked and answered regarding the phone calls placed to nonlawyers who threatened to breach confidentiality.
 

 [44]
 

 . Mr. Plattsmier confirmed that letters are sent to nonlawyers who are reportedly in breach of the confidentiality mandated by Rule XIX, § 16(A) and (I).
 

 [45]
 

 . In fact, we note that the effectiveness of the entire confidentiality regime relies heavily upon this practical impact, this silencing of the nonlawyer participants. Mr. Plattsmier testified that over eighty percent of all complainants are nonlawyers. If these nonlaw-yers did not abide by the confidentiality rule, the effect of the rule would be greatly diminished.
 

 [46]
 

 . The confidentiality rule analyzed in the
 
 Petition of Brooks
 
 case generally required that participants maintain the confidentiality of the attorney disciplinary proceedings unless or until formal charges were initiated. 678 A.2d at 142-143. Thus, as is the case under our rules, if a disciplinary complaint was dismissed or addressed using private discipline, participants were required to maintain the confidentiality of the proceedings for all time.
 
 Id.
 

 [47]
 

 . Mr. Shea testified at the hearing before the commissioner that he cannot remember a respondent ever taking advantage of this particular exception. Mr. Plattsmier, however, indicated that a limited number of respondent attorneys have exercised their right to waive the confidentiality of the attorney disciplinary proceedings.
 

 [48]
 

 . The substantial suppression of speech plainly required and effected by the confidentiality rule evokes the concerns which have given rise to the Supreme Court’s overbreadth doctrine.
 
 See generally Board of Airport Com'rs of City of Los Angeles v. Jews for Jesus, Inc.,
 
 482 U.S. 569, 574-577, 107 S.Ct. 2568, 2572-2573, 96 L.Ed.2d 500 (1987);
 
 Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, et al.,
 
 466 U.S. 789, 798-801, 104 S.Ct. 2118, 2125-2127, 80 L.Ed.2d 772 (1984);
 
 Broadrick v. Oklahoma,
 
 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, the parties have not specifically argued that this doctrine applies. More importantly, the posture we have assumed in regards to the constitutional question renders further consideration of the overbreadth doctrine moot. From the moment we agreed to consider the constitutionality of the confidentiality rule, we endeavored to develop a record and assess the constitutionality of the rule based on its full scope and application.
 
 See In Re: Ivan David Warner and Steven Joseph Rondo,
 
 05-1303 (La.4/20/2006), La. S.Ct. Order (appointing retired Judge Philip Ciaccio as a commissioner to "take evidence and to develop a record concerning the issue of the constitutionality of Supreme Court Rule XIX, § 16" widiout limitations). A significant portion of the record, including the briefs, the oral arguments, and particularly the transcript of die hearing before the commissioner, reflect this broad focus. Accordingly, our analysis was not limited to the facts of the instant matter. We have tendered findings and conclusions based on the full scope and application of the confidentiality rule.
 

 [49]
 

 .Mr. Plattsmier clearly stated that participants are informed that they are required to maintain the confidentiality of the attorney
 
 *243
 
 disciplinary proceedings until the filing and service of formal charges. He also testified that both lawyers and nonlawyers generally obey the confidentiality provisions. However, it should be noted that the record does not clearly indicate the extent to which the ODC has monitored or enforced the continuing obligation of participants to maintain confidentiality in cases where the complaint is dismissed or addressed using private discipline.
 

 [50]
 

 .
 
 Ward v. Rock Against Racism,
 
 491 U.S. 781, 803, 109 S.Ct. 2746, 2760, 105 L.Ed.2d 661 (1989).
 

 [51]
 

 .
 
 Kovacs v. Cooper,
 
 336 U.S. 77, 87-89, 69 S.Ct. 448, 453-454, 93 L.Ed. 513 (1949).
 

 [52]
 

 .
 
 Nationalist Movement v. City of Camming,
 
 92 F.3d 1135, 1139-1140 (11th Cir. 1996).
 

 [53]
 

 . In
 
 Turner Broadcasting,
 
 the Court acknowledged that it had previously stated that the " ‘principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys.’ " 512 U.S. at 642, 114 S.Ct. at 2459 (citation omitted). However, the Court then proceeded to clarify this policy stating:
 

 The purpose, or justification, of a regulation will often be evident on its face ... [Wjhile a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based, it is not necessary to such a showing in all cases. Nor will the mere assertion of a content-neutral purpose be enough to save a law which, on its face, discriminates based on content.
 
 Id.,
 
 512 U.S. at 642-643, 114 S.Ct. 2445 (internal quotations and citations omitted). In concluding this discussion, the Court enunciated the “general rule” cited above: “laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.”
 
 Id.,
 
 512 U.S. at 643, 114 S.Ct. 2445.
 
 See also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,
 
 502 U.S. 105, 117, 112 S.Ct. 501, 509, 116 L.Ed.2d 476 (1991) ("[fillicit legislative intent is not the
 
 sine qua non
 
 of a violation of the First Amendment ... [plaintiffs] need adduce no evidence of an improper censorial motive”) (quotations and citations omitted);
 
 Carey v. Brown,
 
 447 U.S. 455, 464-465, 100 S.Ct. 2286, 2292, 65 L.Ed.2d 263 (1980) ("even the most legitimate goal may not be advanced in a constitutionally impermissible manner”).
 

 [54]
 

 . During oral arguments, counsel for the ODC asserted that, "content based speech is a rule which restricts a particular viewpoint.” Similarly, during the hearing before the commissioner, the ODC argued that the confidentiality rule is content neutral because, “it doesn't matter whether your opinion is pro that the lawyers should be disciplined or that they should not be disciplined.” These statements do not accurately reflect the governing law. As we explain above, content-based restrictions of speech include both regulations that target speech based on viewpoint and regulations that target speech based on its general subject matter.
 
 See also Baugh
 
 v.
 
 Judicial Inquiry and Review Commission,
 
 907 F.2d 440, 444 (4th Cir.1990) ("viewpoint-neutrality is not equivalent to content-neutrality and the difference between the two concepts is critical in a first amendment analysis”).
 

 [55]
 

 . These exceptions are addressed in the following section.
 

 [56]
 

 . Specifically, the ODC asserts that the information suppressed by the confidentiality rule is similar to information obtained via pretrial civil discovery, the class of information which was at issue in
 
 Rhinehart.
 
 Assuming that the ODC is correct in observing that some information suppressed by the confidentiality rule is similar in nature to the information at issue in
 
 Rhinehart,
 
 we must also acknowledge that some of the information suppressed under our rule is quite different. Under the confidentiality rule participants are not only bound from disseminating documents or information that they receive in furtherance of the investigation of a complaint. Participants in an attorney disciplinary matter are prohibited from divulging any information related to the disciplinary proceedings. As we have explained, this includes the
 
 *247
 
 fact that a complaint has been filed, the handling of the complaint, and, in many cases, the final disposition of the complaint. The parties bound by the protective order in
 
 Rhinehart
 
 faced no such limitation. They remained free to discuss the charges filed and the progress of the case generally, and they retained the right to comment on the final decision rendered in the matter.
 
 Rhinehart,
 
 467 U.S. at 27 n. 8, 104 S.Ct. 2199.
 

 [57]
 

 . The protective order at issue in
 
 Rhinehart
 
 only barred the defendants in that case from divulging the segment of total discoverable material that posed the greatest threat to the rights of the members of a particular religious group implicated in the matter. Specifically, the information involved threatened these individuals’ rights to privacy, freedom of religion, and freedom of association. 467 U.S. at 38, 104 S.Ct. 2199 (Brennan, J., concurring).
 

 [58]
 

 . Specifically the Court described the appropriate level of scrutiny as follows:
 

 ... [I]t is necessary to consider whether the practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression and whether the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.
 

 Rhinehart,
 
 467 U.S. at 32, 104 S.Ct. 2199 (internal quotations omitted and citations omitted). Under this standard, the Court affirmed the protective order, holding:
 

 ... [W]here, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.
 

 Id.,
 
 467 U.S. at 37, 104 S.Ct. 2199.
 

 [59]
 

 .See In re Alexander Grant & Co. Litigation,
 
 820 F.2d 352, 355 (11th Cir.1987) (concluding that under
 
 Rhinehart
 
 a protective order is “not subject[] to heightened scrutiny” if the “order [is] issued [by a trial court] upon [a finding of] good cause and limited to pretrial civil discovery”).
 

 [60]
 

 .
 
 See Doe v. Sup.Ci.,
 
 734 F.Supp. at 984-988;
 
 Petition of Brooks,
 
 678 A.2d at 143-144;
 
 R.M. v. Snp.Ct.,
 
 883 A.2d at 377;
 
 Doe v. Doe,
 
 127 S.W.3d at 732.
 

 [61]
 

 .
 
 See Lind v. Grimmer,
 
 859 F.Supp. 1317, 1333 (D.Haw.1993) and
 
 Lind v. Grimmer,
 
 30 F.3d 1115, 1117-1118 (9th Cir.1994) (reviewing a Hawaiian statute which generally required that proceedings before the Campaign Spending Commission remain confidential unless or until there was a finding of probable cause);
 
 Kcimasinski v. Judicial Review Council,
 
 797 F.Supp. 1083, 1090 (D.Conn.1992) and
 
 Kamasinski v. Judicial Review Council,
 
 44 F.3d 106, 109 (2nd Cir.1994) (reviewing a Connecticut statute which generally required that proceedings before the Judicial Review Council remain confidential unless or until títere was a finding of probable cause);
 
 Baugh v. Judicial Inquiry and Review Comm'n,
 
 907 F.2d 440, 444-445 (4th Cir. 1990) (reviewing a statute which generally required that the proceedings of the Judicial Inquiry and Review Commission be kept confidential unless or until the record of any particular proceeding was filed with the Virginia Supreme Court);
 
 Providence Journal Co. v. Newton,
 
 723 F.Supp. 846, 854-856 (D.R.I. 1989) (reviewing a statute which generally required that proceedings before the Rhode Island Ethics Commission be kept confidential unless or until a final decision was rendered by an adjudicative panel following a finding of probable cause and a hearing).
 

 [62]
 

 . In
 
 Boos,
 
 the Court, citing several cases, stated "... we have required the State to show that the ‘regulation is
 
 necessary
 
 to serve a compelling state interest and that it is narrowly drawn to achieve that end.’ " (emphasis added) 485 U.S. at 321-322, 108 S.Ct. at 1164 (citations omitted). This does not add a new element to the strict scrutiny analysis. As we explain in the following section, the requirement that a regulation must be necessary to serve the state interest is already included in the narrowly tailored analysis.
 

 [63]
 

 . At the hearing before the commissioner and in briefs submitted to this Court the ODC has argued that the confidentiality rule is narrowly tailored because, in their opinion, the rule can only be enforced against a small percentage of the state’s population, namely the state’s lawyers. This argument is rooted in a misunderstanding of the pertinent standards. A regulation is not narrowly tailored simply because it applies to or is enforceable against only a small percentage of the popula
 
 *250
 
 tion. Under strict scrutiny, the ODC must prove that the confidentiality rule is narrowly tailored or precisely drawn to serve a particular compelling interest.
 
 See Boos,
 
 485 U.S. at 321, 108 S.Ct. at 1164 (to withstand strict scrutiny the state must demonstrate the regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve
 
 that end ")
 
 (emphasis added) (internal quotations and citations omitted);
 
 See also White,
 
 536 U.S. at 775, 122 S.Ct. at 2535 ("Clarity on this point is essential before we can decide whether impartiality is indeed a compelling state interest, and, if so, whether the announce clause is narrowly tailored to achieve
 
 it.")
 
 (emphasis added).
 

 [64]
 

 .
 
 See
 
 Laurence H. Tribe,
 
 American Constitutional Law
 
 § 16-32, 1602 (2d ed.1988) (under intermediate scrutiny the court insists that the objectives served by a regulation be " ‘important' even if they need not be as 'compelling' as strict scrutiny would demand”);
 
 Shapiro v. Thompson,
 
 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969) (affirming the fact that the compelling interest standard is more stringent than rational basis review) (overruled on other grounds by
 
 Edelman v. Jordan,
 
 415 U.S. 651, 670, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974));
 
 See also Carey v. Brown,
 
 447 U.S. 455, 464, 100 S.Ct. 2286, 2292, 65 L.Ed.2d 263 (1980):
 

 Appellant ... contends that this case is distinguishable from
 
 Mosley.
 
 He argues that the state interests here are especially compelling ... Appellant explains that whereas [the statute in
 
 Mosley,
 
 which was found to be unconstitutional,] sought to prevent disruption of the schools, concededly a "substantial'’ and "legitimate” governmental concern, ... the [statute at issue here] was enacted to ensure privacy in the home, a right which appellant views as paramount in our constitutional scheme. For this reason, [appellant] contends that the same content-based distinctions held invalid in the
 
 Mosley
 
 context may be upheld in the present case.
 

 [65]
 

 .
 
 See City of Ladue
 
 v.
 
 Gilleo,
 
 512 U.S. 43, 51, 114 S.Ct. 2038, 2043, 129 L.Ed.2d 36 (1994) ("While surprising at first glance, the notion that a regulation of speech may be impermis-sibly
 
 underinclusive
 
 is firmly grounded in basic First Amendment principles.”).
 

 [66]
 

 . The underinclusive doctrine is best explained by example. In
 
 Carey,
 
 Illinois attempted to justify a regulation which barred all picketing, except for picketing related to a labor dispute, by arguing the regulation was necessary to maintain domestic tranquility. 447 U.S. at 465, 100 S.Ct. at 2292-2293. The Supreme Court found that by exempting labor picketing from the general picketing prohibition the state had fatally impeached its argument that the rule was necessary to avoid domestic disturbance.
 
 Id.,
 
 447 U.S. at 465 n. 9, 100 S.Ct. 2286. No evidence was presented to show that labor picketing would be less disruptive of residential privacy. Thus, the Court held the state's asserted interest in promoting the privacy of the home was not sufficient to save the regulation.
 
 Id.,
 
 447 U.S. at 465, 100 S.Ct. 2286.
 

 [67]
 

 .Because we conclude that the confidentiality rule fails to satisfy the requirements of strict scrutiny on other grounds, we need not address whether or not the confidentiality rule is underinclusive as to the interests asserted by the ODC. We have nonetheless included the above discussion on the underin-clusive doctrine in order to provide a complete and accurate description of the standards governing the strict scrutiny analysis.
 

 [68]
 

 . One scholar has noted that three of the narrowly tailored factors: advancement of the state interest, no overinclusiveness, and the least restrictive alternative requirement, can be subsumed within the requirement that a regulation be necessary to serve a compelling state interest.
 

 If the law doesn't actually advance the interest, then not having the law at all would be a less restrictive but equally effective alternative. Likewise, if the law is overin-clusive, then a narrower law that exempted speech which doesn’t implicate the interest would be less restrictive and equally effective. When the Court says, as it sometimes does, that a law must be 'necessary to serve a compelling state interest,’ it seems to be referring to these three components.
 

 Eugene Volokh,
 
 Freedom of Speech, Permissible Tailoring and Transcending Strict Scrutiny,
 
 144 U. Pa. L.Rev. 2417, 2423 (1996) (collecting cases).
 

 [69]
 

 .
 
 See also
 
 Eugene Volokh,
 
 Freedom of Speech, Permissible Tailoring and Transcending Strict Scrutiny,
 
 144 U. Pa. L.Rev. 2417, 2421-2424 (1996) (collecting cases and listing the various elements of the narrowly tailored analysis).
 

 [70]
 

 . The comments to the source provisions for our current confidentiality rule provide strong support for our finding on this point. Again, the confidentiality provisions at issue in this case, La. S.Ct. Rule XIX, § 16(A) and (I), were adopted from Model Rule 16 of the ABA’s 1989 MRLDE. See 114 No. 2
 
 Amm. Rep. ABA
 
 334-337 (1989). The comments to the 1989 version of Model Rule 16 state that the confidentiality that attaches prior to the filing of formal charges is, "primarily for the benefit of the respondent, and protects against publicity predicated upon unfounded accusations.”
 
 Id.
 
 at 336. This is the reputational interest we have already addressed. The comments do not mention the other three interests asserted herein by the ODC.
 

 [71]
 

 . Indeed, in their supplemental brief the ODC states that “the confidentiality provided by this Rule may be waived by the Respondent attorney at any time.”
 

 [72]
 

 . It should be noted that Mr. Plattsmier testified that when the ODC is able to independently verify the facts contained in a complaint, in deference to the confidentiality requirement, the agency does not forward the original complaint directly to the respondent attorney. The agency has adopted this procedure in an attempt to reduce complainant exposure. However, Mr. Plattsmier admits that this is a rare exception to the general practice of the agency. While admirable, this does not remove the respondent's apparent ability under Rule XIX, § 16(A)(1) to waive confidentiality completely. Furthermore, if tire ODC’s specific interest is in preserving their capability to utilize the above procedures to limit complainant exposure, we must recognize that this result can be achieved via a regulation that restricts less speech. We could simply impose confidentiality only upon the disciplinary agency itself, rather than upon all participants in the disciplinary process. This would allow the agency to continue to withhold the identity of the original complainant, when practical, until confidentiality is lifted.
 

 [73]
 

 . As described by Mr. Corbally, the Massachusetts confidentiality rule is similar to Model Rule 16 of the ABA MRLDE, as revised by the 1993 amendments discussed herein. 118 No. 2
 
 Annu. Rep. ABA
 
 226-227 (1993).
 

 [74]
 

 . We note that Mr. Plattsmier testified at the hearing before the commissioner that he had never seen a situation like the instant case before, where lawyers have taken a respondent attorney's reply to a bar discipline complaint and filed it into the record of an ongoing parallel civil proceeding while the attorney disciplinary complaint was still under investigation.
 

 [75]
 

 . During the hearing before the commissioner, counsel for Mr. Warner asked Mr. Stanley the following question:
 

 Would it be a less restrictive alternative to have a rule that said, "thou shall not use information gained in a disciplinary proceeding in a civil proceeding?"
 

 Mr. Stanley replied, “[i]f that were the only purpose of the Rule, you would be correct."